676 S.E.2d 684

**The STATE, Respondent,**

v.

**Gary A. WHITE, Petitioner.**

**No. 26642.**

Supreme Court of South Carolina.

Heard Feb. 4, 2009.

Decided April 27, 2009.

Rehearing Denied May 28, 2009.

Appellate Defender LaNelle C. DuRant, of South Carolina Commission on Indigent Defense, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia, and Solicitor Warren Blair Giese, of Columbia, for Respondent.

Justice KITTREDGE:

We granted a writ of certiorari to review a court of appeals opinion upholding the admissibility of Rule 702, SCRE, expert testimony related to dog tracking evidence. *State v. White,* 372 S.C. 364, 642 S.E.2d 607 (Ct.App.2007). We affirm the court of appeals in result.

## I.

This case arises from an armed robbery of a convenience store in Columbia, South Carolina. After midnight on April 19, 2004, Gary White and Anthony Morris were riding in a car driven by Roy Wiggins. As Wiggins drove past a convenience store, White told Wiggins to turn around and go back to the store. Wiggins complied. Wiggins drove to the store and parked behind it. White and Morris exited the car, with Wiggins staying behind in the driver's seat. White was carrying a gun.

White and Morris entered the convenience store. Gwen Anthony, the store manager, was restocking the grill area when White and Morris entered suddenly. Anthony described the robbers' entry as a "flash."

White, armed with the gun, grabbed Anthony, put his arm around her, and pointed the gun to her neck. Morris moved through the store stealing cash, lottery tickets and an 18–pack of beer while White continued to hold Anthony at gunpoint. While Morris was at the beer cooler, White, while standing up, apparently lost consciousness.

Anthony testified that White's head fell to her shoulder, and the gun dropped from her neck. Although he was unconscious

for only a few seconds, Anthony observed that White's breath smelled like alcohol, his gun was black with a silver top, and his jeans were baggy and dark in color. With the 18–pack of beer in hand, Morris ran up the aisle toward the door and screamed at White, waking him. White, still holding Anthony, returned the gun to her neck and began to move toward the door, forcing her to accompany him. As they exited the store, White pushed Anthony away and ran in the opposite direction. At that very moment, Officer Rouppasong of the Columbia Police Department pulled into the store parking lot on a routine break.

Upon his arrival on the scene, Officer Rouppasong saw two people: Anthony, waving and flagging him down and another person running away from the store. Rouppasong described the man he saw running as a black male, wearing a white t-shirt and dark colored pants, holding or carrying something in one of his hands. Rouppasong remained in his vehicle and followed White. As he followed him around the corner of the store, Rouppasong saw a car parked on the street. Rouppasong saw a black male (later identified as White) exit the car on the passenger side and flee. Rouppasong did not give chase; instead, he stayed with the vehicle and Wiggins. Officer Gunter, with the K9 unit, was called to the scene to search for the suspect.

Officer Gunter arrived on the scene approximately thirty minutes after the robbery. Once there, Rouppasong relayed the necessary information that allowed Gunter to know where to initiate the track. Gunter and his tracking dog, Aurie, began tracking and soon found White nearby sleeping next to some bushes, gun in hand. Rouppasong testified that the man he saw lying by the bushes, asleep, was the same man he saw exiting the store and fleeing the crime scene. There were two other in-court eyewitness identifications of White. Wiggins testified that White left his car with a gun, returned to his car a short time later, and then fled when police arrived. The second identification came from Morris.

White was convicted of two counts of armed robbery and kidnapping; he was sentenced to life without parole.[1] The

---

1. White's criminal history triggered a life without parole sentence pursuant to S.C.Code Ann. § 17–25–45 (2003).

court of appeals affirmed, rejecting the contention that dog tracking evidence must satisfy the standard for "scientific based" expert testimony under *State v. Jones*, 273 S.C. 723, 259 S.E.2d 120 (1979). The court of appeals noted a distinction between two types of expert testimony, "scientific evidence versus experience-based knowledge." *White*, 372 S.C. at 381, 642 S.E.2d at 615. With regard to nonscientific expert testimony (which includes dog tracking evidence), the court of appeals found that "questions about the reliability of [the dog handler] go only to the weight [of his testimony], but not admissibility." *Id.* at 376, 642 S.E.2d at 613. Because of the suggestion that an initial determination of reliability is not part of the trial court's gatekeeping role, we granted White's petition for a writ of certiorari.[2]

## II.

### A.

A trial court's decision to admit or exclude expert testimony will not be reversed absent a prejudicial abuse of discretion. *State v. Price*, 368 S.C. 494, 498, 629 S.E.2d 363, 365 (2006).

White concedes the dog handler met the Rule 702, SCRE, qualifications due to his experience and training.[3] White contends the trial court failed in its gatekeeping role to vet the reliability of the dog's tracking skills, thus leaving the jury to

---

2. White also asked the court of appeals to grant him a new trial based on newly discovered evidence. It appears the new trial motion was not presented to the trial court. Moreover, White did not ask the court of appeals to remand the new trial motion to the trial court. *See State v. Mercer*, 381 S.C. 149, 165–66, 672 S.E.2d 556, 564–65 (2009) (recognizing that a motion for a new trial based upon after discovered evidence must be presented to the trial court in the first instance). The court of appeals declined to address the issue "because it ha[d] not been raised to and ruled on by the trial court and [wa]s not properly before th[e] court." *White*, 372 S.C. at 387, 642 S.E.2d at 619. We affirm the court of appeals on this issue. Rule 220(b)(1), SCACR. The disposition of this issue is without prejudice to White seeking such relief in the trial court.

3. There is likewise no challenge to the Rule 702 criteria that the evidence "will assist the trier of fact to understand the evidence or to determine a fact in issue."

speculate about the dog's reliability. We agree with White's premise that all expert testimony under Rule 702, SCRE, imposes on the trial courts an affirmative and meaningful gatekeeping duty. To the extent the court of appeals opinion may be construed as excluding a gatekeeping role for trial courts in connection with nonscientific (or experienced based) [4] expert testimony, such construction is rejected.

All expert testimony must satisfy the Rule 702 criteria, and that includes the trial court's gatekeeping function in ensuring the proposed expert testimony meets a reliability threshold for the jury's ultimate consideration. Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

"This language makes no relevant distinction between 'scientific' knowledge and 'technical' or 'other specialized' knowledge. It makes clear that any such knowledge might become the subject of expert testimony. . . . Hence, as a matter of language, the Rule applies its reliability standard to all 'scientific,' 'technical,' or 'other specialized' matters within its scope." *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Reliability is a central feature of Rule 702 admissibility, and our jurisprudence is in complete accord. *State v. Jones,* 343 S.C. 562, 572, 541 S.E.2d 813, 818 (2001) (finding error in the trial court's decision to admit "unreliable" expert evidence); *State v. Council,* 335 S.C. 1, 20, 515 S.E.2d 508, 518 (1999) (noting that before expert evidence is admitted the trial court must determine it is reliable).

With regard to dog tracking evidence, this Court's jurisprudence (even prior to the adoption of the South Carolina Rules of Evidence in 1995) speaks to the reliability foundational requirement of such evidence. *State v. Childs,* 299 S.C. 471, 476–77, 385 S.E.2d 839, 842–43 (1989) (finding no

---

4. We note that case law uses the terms nonscientific expert testimony and experienced based expert testimony interchangeably. For consistency, we will use the term nonscientific expert testimony.

abuse of discretion in trial court's admission of dog tracking testimony where a deputy sheriff had " 'run' " bloodhounds for eleven years and finding of reliability supported by "dogs ... characteristics of acuteness in scent as well as the power of discrimination between human and other scents"); *State v. Brown*, 103 S.C. 437, 444, 88 S.E. 21, 23 (1916) (finding trial court's admission of dog tracking evidence constituted an abuse of discretion where evidence established that the dog tracking occurred outside the "period of efficiency" and was therefore unreliable).

■ While we agree with White concerning the important gatekeeping role of the trial court in determining the admissibility of expert testimony under Rule 702, the trial court properly discharged its duty in this case. As noted, White concedes the qualifications of Officer Gunter as a dog handler. White's argument is that the dog tracking evidence is unreliable. The trial court permitted a thorough examination of all matters relating to admissibility, including reliability.

Beyond Officer Gunter's extensive training and experience, there was ample evidence concerning the training and reliability of the dog, Aurie. Aurie is a German shepherd that descended from a bloodline of known police and military working dogs. Through testing, Aurie has been certified in several areas of tracking, yet Aurie's strongest skill is tracking people. Officer Gunter and Aurie, as of the trial, had been "partners" in excess of seven years and had accomplished approximately 750 tracks together. The finding of reliability is well supported by the record, and we find no abuse of discretion in the admission of the dog tracking evidence.

■ In addition to the trial court's discharge of its gatekeeping role in assessing the admissibility of the dog tracking evidence, the court properly instructed the jury that "you are to give his testimony such weight and credibility as you deem appropriate as you will with any and all witnesses that will testify in this trial."

## B.

■ The court of appeals is commended for its thorough analysis of our country's jurisprudence concerning dog track-

ing evidence. While foundational requirements vary, "an overwhelming number [of jurisdictions] allow admission of dog tracking evidence in a criminal case to prove identity." *White,* 372 S.C. at 378, 642 S.E.2d at 614. To provide uniformity, we think it advisable to adopt the following evidentiary framework to guide our bench and bar concerning dog tracking evidence. By extrapolating from our case law and other authorities, we conclude a sufficient foundation for the admission of dog tracking evidence is established if (1) the evidence shows the dog handler satisfies the qualifications of an expert under Rule 702; (2) the evidence shows the dog is of a breed characterized by an acute power of scent; (3) the dog has been trained to follow a trail by scent; (4) by experience the dog is found to be reliable; (5) the dog was placed on the trail where the suspect was known to have been within a reasonable time; and (6) the trail was not otherwise contaminated. *See State v. Childs,* 299 S.C. at 476–77, 385 S.E.2d at 842–43; *State v. Brown,* 103 S.C. at 443–45, 88 S.E. at 22–23; *see also State v. Taylor,* 337 N.C. 597, 447 S.E.2d 360, 368–69 (1994); Jay M. Zitter, Annotation, *Evidence of Trailing by Dogs in Criminal Cases,* 81 A.L.R. 5th 563 (2000).

### C.

■ The case before us may appear straightforward, especially in light of the overwhelming evidence of guilt. Yet on appeal the State has persisted with the argument that reliability need not be shown for the admission of nonscientific expert testimony. Because the court of appeals in this case has approvingly cited *State v. Morgan,* 326 S.C. 503, 485 S.E.2d 112 (Ct.App.1997) in support of the State's position, we believe clarification of the analytical framework for the admissibility of nonscientific expert testimony is warranted.

At oral argument, the State argued this Court need not concern itself with the issue of reliability because the case *only* involves nonscientific expert testimony. Presumably, the State relies on the court of appeals' decision in *State v. Morgan,* which held "[i]f the expert's opinion does not fall within [the] *Jones*[5] [standard for scientific expert testimony], questions about the reliability of an expert's methods go only

5. *State v. Jones,* 273 S.C. 723, 259 S.E.2d 120 (1979).

to the weight, but not admissibility, of the testimony." *Morgan*, 326 S.C. at 513, 485 S.E.2d at 118. This is an incorrect statement of law.

We overrule *Morgan* to the extent it suggests that only scientific expert testimony must pass a threshold reliability determination by the trial court prior to its admission in evidence.[6] The familiar tenet of evidence law that a continuing challenge to evidence goes to "weight, not admissibility" has never been intended to supplant the gatekeeping role of the trial court in the first instance in assessing the admissibility of expert testimony, including the threshold determination of reliability. Nonscientific expert testimony must satisfy Rule 702, both in terms of expert qualifications and reliability of the subject matter.

Courts are often presented with challenges on both fronts-qualifications and reliability. The party offering the expert must establish that his witness has the necessary qualifications in terms of "knowledge, skill, experience, training or education." Rule 702, SCRE. With respect to qualifications, a witness may satisfy the Rule 702 threshold yet the opponent may still challenge the amount or quality of the qualifications. It is in this latter context that the trial court properly concludes that "defects in the amount and quality of education or

6. *Morgan* relies on this Court's opinions in *State v. Schumpert*, 312 S.C. 502, 435 S.E.2d 859 (1993) and *State v. Whaley*, 305 S.C. 138, 406 S.E.2d 369 (1991) to support its finding that only scientific expert testimony includes reliability as part of the foundation for admission in evidence. *Schumpert* and *Whaley* stand for no such proposition. *Schumpert* addressed the qualifications of a proposed mental health professional and her ability to give expert testimony on rape trauma syndrome. *Whaley* dealt with the admissibility of a proposed expert in eyewitness identifications. Because the area of expertise was "distinguishable from 'scientific' evidence," the *State v. Jones* scientific framework was not appropriate. *Whaley*, 305 S.C. at 142, 406 S.E.2d at 371–72. The *Whaley* Court further observed, "[a]lthough we are of the opinion that this type of testimony need not be subjected to the *Jones* test, we reject any contention that it does not comport with *Jones.*" *Id.* at 142 n. 2, 406 S.E.2d at 372 n. 2. *Whaley* then proceeded to analyze the matter of reliability and held, in the factual context presented, the trial court abused its discretion by excluding the expert's testimony. *Id.* at 143, 406 S.E.2d at 372. In short, neither *Schumpert* nor *Whaley* contains the slightest hint that a trial court may ignore the question of reliability when considering the admissibility of nonscientific expert testimony.

experience go to the weight to be accorded the expert's testimony and not its admissibility." *State v. Myers,* 301 S.C. 251, 256, 391 S.E.2d 551, 554 (1990). Turning to the reliability factor, a trial court may ultimately take the same approach, but only after making a threshold determination for purposes of admissibility.

*State v. Council,* 335 S.C. 1, 515 S.E.2d 508 (1999) is often cited for the gatekeeping role of the trial court with regard to expert testimony under Rule 702, as well as the standard reliability factors for scientific evidence.[7] The foundational reliability requirement for expert testimony does not lend itself to a one-size-fits-all approach, for the *Council* factors for scientific evidence serve no useful analytical purpose when evaluating nonscientific expert testimony. We have set forth above foundational requirements for Rule 702 expert testimony concerning dog tracking evidence.

We do not pretend to know the myriad of Rule 702 qualification and reliability challenges that could arise with respect to nonscientific expert evidence. Consequently, we offer no formulaic approach that will apply in the generality of cases. Yet the trial court in the discharge of its gatekeeping role in determining admissibility must initially answer the always present threshold questions of qualification and reliability.

## III.

We hold that the trial courts of this state have a gatekeeping role with respect to all evidence sought to be admitted under Rule 702, whether the evidence is scientific or nonscientific. In the discharge of its gatekeeping role, a trial court must assess the threshold foundational requirements of qualifications and reliability and further find that the proposed evidence will assist the trier of fact. The familiar evidentiary mantra that a challenge to evidence goes to "weight, not admissibility" may be invoked only after the trial court has vetted the matters of qualifications and reliability and admitted the evidence.

---

7. The *State v. Council* factors for scientific expert testimony are: (1) the publications and peer review of the technique; (2) prior application of the method to the type of evidence involved in the case; (3) the quality control procedures used to ensure reliability; and (4) the consistency of the method with recognized scientific laws and procedures.

We affirm the court of appeals in result. The trial court properly discharged its gatekeeping role in assessing the dog tracking evidence under Rule 702, as to qualifications and reliability.

**AFFIRMED IN RESULT.**

TOAL, C.J., WALLER, PLEICONES, JJ., and Acting Justice E.C. BURNETT, III, concur.