## THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

George L. Chavis, Appellant.

Appellate Case No. 2011-188568

---

Appeal from Marlboro County
Howard P. King, Circuit Court Judge

---

Opinion No. 27491
Heard October 2, 2013 – Filed February 4, 2015

---

**AFFIRMED**

---

Chief Appellate Defender Robert Michael Dudek, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant
Deputy Attorney General David A. Spencer, both of
Columbia, for Respondent.

---

**PLEICONES, J:** George Chavis (Appellant) was convicted of multiple crimes
involving unlawful sexual conduct with a minor, Appellant's step-daughter
(Victim). The issues before the Court concern the qualification and testimony of
two child abuse assessment experts. We affirm.

# FACTS

Appellant was convicted of one count of criminal sexual conduct with a minor (CSCM) in the first degree, two counts of CSCM in the second degree, one count of lewd act upon a child, and one count of contributing to the delinquency of a minor. Appellant was sentenced to twenty-five years on the CSCM first, twenty years on each of the CSCM seconds, fifteen years for the lewd act, and three years for the contributing to the delinquency of a minor with all sentences running concurrently.

Appellant's convictions arose out of unlawful conduct between Appellant and Victim that began when Victim was seven years old. The State presented evidence that Appellant molested Victim, forced her to perform sexual acts on him, and forced her to watch pornography.

In addition to the assaults of Victim, Victim testified that when Victim's stepsister (Stepsister) visited, Appellant would have them both perform sexual acts on him. This testimony was corroborated by Stepsister, who stated that she and Victim were sexually assaulted by Appellant and gave further detailed accounts of her own abuse at the hands of Appellant.[1]

In 2004, Stepsister reported Appellant's sexual abuse of both her and Victim. At this time, Victim was around ten years old and Stepsister was around fourteen. As a result of Stepsister's disclosure, Stepsister was taken to the Durant Children's Center (Durant Center) in Florence, where a forensic interview was performed by Mrs. Ginger Gist. Stepsister testified that during the interview Stepsister disclosed that she and Victim had been sexually assaulted by Appellant. In addition to the forensic interview, a medical exam was performed by Dr. Kathy Saunders who testified without objection that Stepsister's results were consistent with sexual activity.

Victim was also taken to the Durant Center in 2004, where a forensic interview was conducted by Mrs. Debbie Elliot. Victim testified that in 2004 she denied being sexually abused to Mrs. Elliot and claimed that Stepsister was lying. Victim was also examined by Dr. Saunders, who testified that the 2004 exam was normal.

---

[1] There is no challenge on appeal to Stepsister's testimony.

Dr. Saunders also testified that a normal exam may be consistent with a history of sexual abuse.[2]

Victim finally told her mother about Appellant's abuse in 2009. Victim was taken back to the Durant Center, where she was again examined by Dr. Rosa and underwent a forensic interview performed by Mrs. Robin Griggs. Dr. Rosa testified that Victim's exam was consistent with being sexually active. The exam also revealed Victim had chlamydia. At trial, the State presented medical records that Appellant was taking medicine commonly used to treat chlamydia at this time. Finally, Victim informed Dr. Rosa that she was sexually active with her boyfriend at the time.

In addition to Victim and Stepsister, two of Appellant's sisters testified, without objection, to their own experiences of being sexually assaulted by Appellant. They described similar experiences to Victim's and Stepsister's claims of being molested and sexually abused by Appellant in their youth.

In addition to testimonial evidence, photographs were introduced of Victim in only her underwear and other various stages of undress. Victim and her mother testified that Appellant took the pictures.

## ISSUES

I.      Did the circuit court err in qualifying Mrs. Griggs and Mrs. Elliott as experts in child abuse assessment?

II.     If so, was the error harmless?

## DISCUSSION

### I.      Qualification of Mrs. Griggs and Mrs. Elliot

Appellant contends that Mrs. Griggs and Mrs. Elliot should not have been qualified as expert witnesses in the field of child abuse assessment because there was not a sufficient showing of reliability or peer review of their work product. We agree as to Mrs. Elliot. As to Mrs. Griggs, we do not reach the expert issue but find error in the admission of part of her testimony on separate grounds.

---

[2] This finding was consistent with Victim's testimony that she had not had vaginal intercourse with Appellant by this time.

The qualification of an expert witness and the admissibility of the expert's testimony are matters within the trial court's sound discretion. *State v. Meyers*, 301 S.C. 251, 391 S.E.2d 551 (1990). A trial court's decision to admit or exclude expert testimony will not be reversed absent a prejudicial abuse of discretion. *State v. Price,* 368 S.C. 494, 498, 629 S.E.2d 363, 365 (2006). An abuse of discretion occurs when the conclusions of the circuit court are either controlled by an error of law or are based on unsupported factual conclusions. *State v. Douglas,* 369 S.C. 424, 429-30, 632 S.E.2d 845, 848 (2006).

Both parties argue, and we agree, that *State v. White* should apply in qualifying child abuse assessment experts because their testimony is non-scientific. 382 S.C. 265, 676 S.E.2d 684 (2009). Both Mrs. Griggs and Mrs. Elliot were identified as child abuse assessment experts, they both conducted forensic interviews, and both testified they used the RATAC[3] forensic interviewing technique, which this Court has identified as non-scientific. *State v. Kromah*, 401 S.C. 340, 737 S.E.2d 490 (2013) fn. 4 ("The RATAC style of interviewing is not scientific."). Accordingly, we will analyze the qualification of Mrs. Griggs and Mrs. Elliot under *White*.

Under *White*, two threshold determinations must be made. First, the qualifications of the expert must be sufficient, and second, there must be a determination that the expert's testimony will be reliable. *White* at 273, 676 S.E.2d at 688 (citing Rule 702, SCRE).

Appellant does not argue that the *qualifications* of Mrs. Elliot or Mrs. Griggs are insufficient. Instead, Appellant's argument focuses on the *reliability* prong of the *White* analysis. Appellant contends that the State failed to demonstrate sufficient reliability and peer review for Mrs. Griggs and Mrs. Elliot to be qualified as experts in the field of child abuse assessment. We agree that Mrs. Elliott should not have been qualified as an expert witness but do not address Mrs. Griggs's qualifications due to part of her testimony being inadmissible on other grounds.

### A. Mrs. Elliott

Appellant contends the circuit court abused its discretion by improperly qualifying Mrs. Elliot and allowing her to testify concerning a report by Mrs. Gist,[4] the forensic interviewer who interviewed Stepsister in 2004 after Stepsister's initial

---

[3] RATAC stands for Rapport; Anatomy; Touch; Abuse Scenario; and Closure.

[4] Mrs. Gist was unavailable for trial.

allegations of abuse by Appellant. The testimony survived a hearsay objection because the trial court ruled that as an expert, Mrs. Elliot was allowed to rely on the report under Rule 703 SCRE. Mrs. Elliot testified that in her expert opinion a disclosure of abuse had been made to Mrs. Gist.[5]

The State argues that the trial judge did not abuse his discretion in qualifying Mrs. Elliot as an expert. The State cites to Mrs. Elliot's training, education, knowledge of RATAC protocol, and evidence of her performing over 5000 interviews. The State contends that RATAC protocol is peer reviewed and reliable, and therefore Mrs. Elliot's testimony is reliable.[6] While we agree Mrs. Elliot has extensive experience and training, we find that there is insufficient evidence demonstrating Mrs. Elliott's individual reliability.

We agree with Appellant that although Mrs. Elliott was sufficiently trained in RATAC protocol, and that she used RATAC protocol during her interviews, there is simply no evidence that her conclusions or impressions taken from these interviews were accurate. During cross examination, when asked if there was any way to discern what her error rate was, she responded "no." Her only peer review involved one other interviewer reviewing her work to ensure she was using RATAC protocol. When asked what her quality control procedures were, she responded "I use R[A]TAC protocol every time in the interview room."

There is no formulaic approach for determining the foundational requirements of qualifications and reliability in non-scientific evidence. *Id.* at 274, 676 S.E.2d at 688. However, evidence of mere procedural consistency does not ensure reliability without some evidence demonstrating that the individual expert is able to draw reliable results from the procedures of which he or she consistently applies. We find no evidence in this record as to Mrs. Elliott's ability to draw reliable results from the RATAC procedures she consistently follows, and thus find that the threshold reliability requirement of Rule 702 is not met. Accordingly, we hold that

---

[5] The exact colloquy regarding this disclosure went as follows:
> Q: Okay. And after reviewing that interview, and without going into anything that was said to Mrs. Gist, in your expert opinion, was a disclosure made?
> A: It was.

[6] This Court has recently acknowledged that RATAC is not without its critics. *See Kromah,* 401 S.C. at 357, 737 S.E.2d at 499 fn. 5 (2013).

the circuit court abused its discretion in allowing Mrs. Elliot to testify as an expert regarding the report by Mrs. Gist.

### B. Mrs. Griggs

Appellant argues that the circuit court erred in qualifying Mrs. Griggs as an expert because there was insufficient evidence of her reliability. Additionally, Appellant contends the circuit court erred when it found Mrs. Griggs qualified as an expert because this allowed Mrs. Griggs to testify regarding her recommendation that Victim "not be around [Appellant] for any reason," which improperly bolstered the credibility of Victim.

Assuming that there was sufficient evidence of reliability presented for Mrs. Griggs to be qualified as an expert, we find that the circuit court erred in admitting her testimony regarding her recommendation because it was improper bolstering of Victim's credibility.

While experts may give an opinion, they are not permitted to offer an opinion as to the credibility of others. *State v. Kromah, supra.* "Specifically, it is improper for a witness to testify as to his or her opinion about the credibility of a child victim in a sexual abuse matter." *Id.* at 358-359*, 737 S.E.2d at 500.

Mrs. Griggs's recommendation that Appellant not be around Victim for any reason, can only be interpreted as Mrs. Griggs believing Victim's claim that Appellant sexually abused her. This type of testimony is improper. *See e.g., State v. Jennings,* 394 S.C. 473, 480, 716 S.E.2d 91, 94 (2011) (finding error where there was "no other way to interpret the language used in the reports other than to mean the forensic interviewer believed the children were being truthful"); *Kromah*, at 360, 737 S.E.2d at 500 (cautioning forensic interviewers to avoid "any statement that indirectly vouches for the child's believability"); *State v. Dawkins,* 297 S.C. 386, 393–94, 377 S.E.2d 298, 302 (1989) (finding admission of therapist's testimony indicating he believed victim's allegations were genuine was improper).  This type of bolstering, especially when made by a witness imbued with imprimatur of an expert witness, improperly invades the province of the jury. *State v. Wright,* 269 S.C. 414, 417, 237 S.E.2d 764, 766 (1977) ("It is axiomatic that the credibility of the testimony of these witnesses is for the jury."). Accordingly, assuming the circuit court properly qualified Mrs. Griggs as an expert, we find the court erred in allowing Mrs. Griggs to testify regarding her recommendation.

## II. Harmless Error

While we find the qualification of Mrs. Elliott and the testimony of both Mrs. Elliot and Mrs. Griggs improper, in light of the substantial evidence of guilt, we hold that these errors were harmless beyond a reasonable doubt.

An appellate court generally will decline to set aside a conviction due to insubstantial errors not affecting the result. *State v. Black,* 400 S.C. 10, 27, 732 S.E.2d 880, 890 (2012). Whether an error is harmless depends on the circumstances of the particular case. *State v. Mitchell,* 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985). No definite rule of law governs this finding; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case. *Id.*[7]

There are two pieces of testimony which Appellant contends warrant reversal. First, Mrs. Elliott's testimony that Stepsister disclosed abuse to Mrs. Gist in 2004, and second, Mrs. Griggs's testimony regarding her recommendation that Appellant not be around Victim for any reason.

Mrs. Elliott's testimony did little if any harm to Appellant. Multiple witnesses confirmed that Stepsister made a disclosure of sexual abuse in 2004, as did Stepsister in her testimony. Victim confirmed that Stepsister had made a previous disclosure. Victim's mother testified that she knew Stepsister had made a disclosure, and finally, Dr. Saunders testified regarding her medical exam that was performed as a result of Stepsister's disclosure. Therefore, the jury heard three independent witnesses referencing Stepsister's disclosure of abuse in 2004, and testimony of a medical exam that was performed as a result of this disclosure.

---

[7] We disagree with the dissent that the "contributing to the verdict" standard and the "overwhelming evidence" standard are used interchangeably, and that one is less stringent than the other. In this case, where there is error in admitting certain testimony, we find that the error can be deemed harmless because there is other overwhelming evidence of guilt. However, we readily acknowledge that there are some errors, particularly errors of law, which cannot be rendered harmless by overwhelming evidence. *See,e.g., State v. Middleton* 407 S.C. 312, 755 S.E.2d 432 (2014) (Pleicones J, dissenting) (noting that a failure to charge a lesser included cannot be rendered harmless by overwhelming evidence). While we appreciate the discussion by the dissent, as the dissent acknowledges, this issue was not raised by either party.

Accordingly, any error in admission of Mrs. Griggs's testimony is harmless beyond a reasonable doubt. *State v. Johnson,* 298 S.C. 496, 498, 381 S.E.2d 732, 732 (1989) (admission of evidence is harmless where it is merely cumulative of other evidence).

Mrs. Griggs's recommendation that Appellant not be around Victim improperly bolstered Victim's credibility. However, all of Appellant's crimes were established by evidence independent of both Mrs. Griggs and Victim. The determination whether a bolstering error is harmless depends on whether the case turns on the credibility of the victim. *Compare State v. Jennings, supra* (finding improper bolstering by a forensic interviewer not harmless, where there was no physical evidence and the case turned on the victims' credibility), *with Kromah, supra*, (finding error harmless in light of abundant evidence and distinguishing *Jennings* because the case did not turn on the credibility of the victim). We find this case more akin to *Kromah,* as there is physical evidence and multiple witnesses who corroborated the Victim's testimony regarding her abuse at the hands of Appellant.

As to physical evidence corroborating Victim's claims of abuse, first, the State introduced multiple pictures that were found on the Appellant's computer. These pictures included the Victim in various stages of undress and provocative positions.[8] Second, the State presented testimonial and circumstantial evidence establishing that the Appellant took the photos.[9] These pictures not only corroborate Victim and Stepsister's testimony, but are evidence of lewd act upon a minor and contributing to the delinquency of a minor.

Additionally, medical evidence supported Victim's claims of sexual abuse by Appellant. Immediately after Victim made her 2009 disclosure, her medical exam showed that she had chlamydia, and the State presented medical records showing Appellant had been taking medications commonly used to treat chlamydia at this time. This circumstantial evidence corroborated Victim's testimony that Appellant sexually abused her.

---

[8] Pictures of the Appellant completely nude were also found on the computer, which is consistent with Victim and Stepsister's testimony that Appellant showed them pictures of himself naked.

[9] The dissent misunderstands our holding. It is not whether the photos prove the crimes, but rather whether they are independent circumstantial evidence corroborating Victim's testimony.

In addition to physical evidence, substantial testimonial evidence corroborating Victim's testimony was presented. Stepsister gave substantially detailed testimony describing not only her abuse but also describing the times when Stepsister and Victim were abused together. In addition, she testified to seeing Appellant abuse the Victim separately.

Finally, two of Appellant's sisters testified. Each gave detailed testimony of similar instances of abuse by Appellant, which they suffered at a young age. While this did not directly corroborate Victim's testimony, it supported her claims by demonstrating Appellant's common scheme of abusing those close to him. Rule 404, SCRE (allowing evidence of other crimes to demonstrate common scheme or plan). We find the testimony of Mrs. Griggs and Mrs. Elliot harmless beyond a reasonable doubt.

**AFFIRMED.**

**BEATTY, J., concurs.  TOAL, C.J., concurring in part and dissenting in part in a separate opinion in which KITTREDGE, J., concurs.  HEARN, J., dissenting in a separate opinion.**

**CHIEF JUSTICE TOAL:**    While I concur in the result reached in the majority opinion, I write separately to state my disagreement with the reasoning contained in both the majority and dissenting opinions.

### 1. Expert Qualification

First, the majority finds error in the trial court's admission of Elliott's expert testimony on the basis that it was unreliable.  *See State v. White*, 382 S.C. 265, 273, 676 S.E.2d 684, 688 (2009) (stating that for non-scientific expert testimony to be admissible, the qualifications of the expert must be sufficient, and that there must be a determination that the expert's testimony will be reliable) (citing Rule 702, SCRE)).  I disagree with the majority's reasoning that Elliott should not have been qualified as an expert because she did not demonstrate the reliability of the RATAC method of forensic interviewing.

Despite the pall this Court has cast on the RATAC method in past decisions—especially in *Kromah*[10]—RATAC it is still a recognized method of forensic interviewing in this state, and in my opinion, for good reason, due to the sensitive nature of the interviewing process involving a child victim of sexual abuse.  However, I read the majority's opinion to imply that the RATAC method itself is no longer reliable.[11]

If the majority's goal is not to discredit the RATAC method entirely, then I fail to see how Elliott's testimony was unreliable.  She testified that she had performed over 5,000 forensic interviews using the method, and she also testified to her specific training, education, and knowledge of RATAC.  *Cf. White*, 265 S.C. at 274, 676 S.E.2d at 688 (stating there is no "one-size-fits-all" approach for determining the foundational requirements of qualification and reliability in non-scientific evidence).

---

[10] *State v. Kromah*, 401 S.C. 340, 737 S.E.2d 490 (2013).

[11] In fact, trial courts across the country routinely qualify experts who use the RATAC method.  Not only did this Court acknowledge this fact in *Kromah*, but we also stated that RATAC was a useful tool in interviewing child victims of sexual abuse.  *See Kromah*, 401 S.C. at 357 n.5, 737 S.E.2d at 499 n.5.

Regardless, I ultimately agree with the majority that any error was harmless beyond a reasonable doubt for the reasons stated by the majority.[12]

## 2. Improper Bolstering

Next, with respect to the actual testimony of both Elliott and Griggs, it is my opinion that both the majority and the dissent wrongly conclude that the testimony improperly bolstered the victim's credibility.

Without a doubt, our precedents stand for the proposition that an expert in child abuse assessment may not bolster the child victim's veracity or credibility, the idea being that, even if instructed not to, the jury might place more credence in the expert's opinion, thereby invading the jury's fact-finding role. While I respect the import of our previous holdings, as I alluded to previously, I am concerned that the Court has gone too far in discrediting forensic interviewers in these child sex abuse cases, and now finds error whenever a forensic interviewer testifies. In my opinion, forensic interviewing generally, and the RATAC method specifically, have an important role to play in these cases, not just because of the sensitive subject matter and relative immaturity of the victims, but because children often communicate differently than adults. To me, this testimony has evidentiary value.

With respect to Elliott, the dissent finds that the trial court erred in permitting Elliott to testify that Stepsister made a disclosure of abuse to Gist in

---

[12] At this point, I feel compelled to comment on the dissent's criticism of this Court's so-called "inconsistent" application of the doctrine of harmless error. I see no error in the characterization of the standard across our case law *as applied to the facts of each case*. Whether characterized as an "overwhelming evidence" standard or a "contribute to the verdict" standard, the ultimate consequence of the analyses under each standard is the same in that courts are trying to parse whether or not a criminal defendant received a trial that comports with notions of fundamental fairness. Criminal defendants are entitled to a fair trial, but not a perfect trial. Thus, where an error does not impact the fairness of the trial, it is harmless. Both inquiries guide this Court in assessing the question of fairness, and therefore, they are not inconsistent as the dissent suggests.

2004.[13]  With respect to Mrs. Griggs, both the majority and the dissent find that her testimony impermissibly bolstered the victim's credibility because she testified that she recommended that Victim "not be around [Appellant] for any reason."

In my opinion, neither of these experts impermissibly bolstered Victim's credibility or impermissibly vouched for her veracity.  *See Kromah*, 401 S.C. at 359, 737 S.E.2d at 500 (where the expert testified to a "compelling" finding of child abuse), *State v. Jennings*, 394 S.C. 473, 480, 716 S.E.2d 91, 94 (2011) (same).  Elliott's testimony simply relayed what Stepsister disclosed to her; and Griggs's testimony merely restated her recommendation that Appellant stay away from Victim.  The important distinction between this case and cases such as *Kromah* and *Jennings* is that the experts did not state whether or not they *believed* Victim.  Therefore, I cannot see how this expert testimony improperly bolstered Victim's testimony either directly or indirectly.

Accordingly, for the foregoing reasons, I agree that the trial court should be affirmed.

**KITTREDGE, J., concurs.**

---

[13] I note that the majority does not reach the question of the admissibility of Elliott's testimony because it finds that her testimony was unreliable.  While the dissent agrees with majority that Elliott should not have been qualified as an expert, the dissent would also find that Elliott improperly bolstered Victim's testimony.

**JUSTICE HEARN:** I concur with that portion of the majority opinion holding the trial court erred in admitting the expert testimony of Elliott and Griggs. However, I believe the errors in this case were not harmless and I would reverse. Accordingly, I dissent.

Harmless error exists to enforce criminal procedural safeguards while ensuring that inconsequential, technical errors do not result in a new trial. *See Chapman v. California*, 386 U.S. 18, 22 (1967). Error is harmless when it could not reasonably have affected the result of the trial.[14] *State v. Mitchell*, 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985). Whether an error is harmless depends on the facts of the particular case. *Id.*

---

[14] Although not raised by the parties or the majority, I would note this Court has shifted frequently in its approach to harmless error review between the contribute to the verdict standard, which focuses on an error's impact on the jury, and the overwhelming evidence standard, which focuses on the weight of the evidence in general. *Compare State v. Tapp*, 398 S.C. 376, 389, 728 S.E.2d 468, 475 (2012) ("The key factor for determining whether a trial error constitutes reversible error is 'whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'"(quoting *State v. Charping*, 313 S.C. 147, 157, 437 S.E.2d 88, 94 (1993))), *with State v. Bryant*, 369 S.C. 511, 518, 633 S.E.2d 152, 156 (2006) ("[A]n insubstantial error not affecting the result of the trial is harmless where a defendant's guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached."); *see also Lowry v. State*, 376 S.C. 499, 510, 657 S.E.2d 760, 766 (2008) (applying a hybrid of the two standards); *State v. Fletcher*, 379 S.C. 17, 25, 664 S.E.2d 480, 484 (2008) (stating both standards together as the harmless error standard). Most other courts, including the United States Supreme Court, struggle with similar inconsistency. *Compare Harrington v. California*, 395 U.S. 250, 254 (1969) (applying the overwhelming evidence standard), *with Chapman*, 386 U.S. at 24 (applying the contribute to the verdict standard); *see* Roger A. Fairfax, Jr., *Harmless Constitutional Error and the Institutional Significance of the Jury*, 76 Fordham L. Rev. 2027, 2037 (2008) ("Since [*Harrington*], the Court has shifted between the two standards—harmlessness based upon whether the error contributed to the verdict and harmlessness based upon whether the residual evidence was overwhelming—in applying the harmless error rule."). However, even under the less stringent overwhelming evidence standard used by the majority, the errors in this case were not harmless beyond a reasonable doubt.

As the majority holds, the trial court erred in qualifying Elliott as an expert witness, and furthermore, it erred in allowing Elliott to testify that Stepsister made a disclosure of abuse to Gist in 2004.[15]  The majority finds Elliott's testimony "did little if any harm" because other witnesses independently confirmed Stepsister's disclosure.  Respectfully, this finding is conclusory.  None of the three witnesses identified by the majority—Victim, Victim's mother, and Dr. Saunders—were qualified as expert witnesses in this case, and thus none were in an equal position to influence the jury.  *See State v. Kromah*, 401 S.C. 340, 357, 737 S.E.2d 490, 499 (2013) ("[A]lthough an expert's testimony theoretically is to be given no more weight by a jury than any other witness, it is an inescapable fact that jurors can have a tendency to attach more significance to the testimony of experts.").  By ignoring Elliott's impact as an expert witness, the majority undermines its own conclusion as to the impropriety of her testimony, and overlooks the broader importance of Stepsister's credibility in the case against Chavis.

Additionally, the trial court erred in permitting Griggs to testify as an expert that she recommended Victim not be around Chavis for any reason.  As the majority points out, Griggs' testimony was improper because the only logical inference to be drawn was that she believed Victim was telling the truth about being abused by Chavis.  *See State v. Jennings*, 394 S.C. 473, 480, 716 S.E.2d 91, 94 (2011) ("For an expert to comment on the veracity of a child's accusations of sexual abuse is improper."); *State v. McKerley*, 397 S.C. 461, 464, 725 S.E.2d 139, 141 (Ct. App. 2012) ("[W]itnesses are generally not allowed to testify whether another witness is telling the truth.").

The majority minimizes the possible effect of this improper bolstering by asserting that Chavis's crimes "were established by evidence independent of both Mrs. Griggs and Victim."  However, the majority cites only to photographs found on Chavis's computer, medical evidence that Victim had chlamydia coupled with evidence that Chavis was taking medications used to treat chlamydia, and testimonial evidence of other witnesses in the case.  I cannot agree this evidence

---

[15] The concurrence misapprehends this holding by suggesting it is distinct from that of the majority.  As noted, I fully concur in the majority's conclusion it was error for the trial court to allow Elliot to testify about Gist's report *because* it was error for Elliot to be qualified as an expert in the first place.  My disagreement with the majority lies only in its harmless error analysis.

provides overwhelming proof of guilt taken independently of the errors in this case.

As to the photographs found on Chavis's computer, it is true that some show Victim and her mother in their underwear. However, the photographs do not display any nudity or sexual conduct. Furthermore, the only evidence that Chavis took the pictures or even knew of their existence was testimony from the Victim, whose credibility had been improperly bolstered by the admission of Griggs' testimony, and Victim's mother.

As to Victim's chlamydia, she admitted having sex with her boyfriend prior to being diagnosed, making it possible Victim could have contracted chlamydia through that sexual conduct. The only evidence tying Victim's chlamydia to Chavis was testimony by a police officer with no medical training that Chavis was taking antibiotics commonly used to treat chlamydia, and had a number of urinary tract infections consistent with chlamydia. However, the officer could not say with any degree of certainty that Chavis actually *had* chlamydia. Additionally, Chavis introduced evidence his antibiotics are prescribed for a wide range of illnesses in addition to chlamydia.

Finally, the majority relies on testimony from Stepsister, Chavis's two sisters, and Victim's mother. As to Stepsister's testimony, the majority cannot have it both ways; if her testimony is merely cumulative to hold harmless Elliott's improper testimony, it cannot also be central to overcome Griggs' testimony. Stepsister's credibility was improperly bolstered by Elliott, as discussed above, and thus her testimony should not be the primary piece of evidence that shows the jury would have reached the same result had the errors not occurred. As to the testimony of Chavis's sisters, each stated they were sexually abused by Chavis as children. Even accepting their testimony as true, the fact that Chavis abused his sisters over thirty years ago is weak circumstantial evidence—at best—that he abused Victim.[16] In regards to Victim's mother's testimony, it is noteworthy that she never witnessed nor testified to any sexual conduct between Chavis and Victim. Although she testified about behavior that may rise to the level of contributing to the delinquency of a minor (for example she testified Chavis had

---

[16] Although Chavis did not object to this evidence, had he, its admissibility would be in serious doubt. *See* Rule 404(b), SCRE ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.").

Victim in the shower assisting him with bathing while Victim was not wearing a bra), this is not the crime for which the majority finds overwhelming evidence of guilt. [17]

Viewed as a whole, the errors in this case were not harmless because they reasonably could have affected the end result of the trial. In my view, the majority's opinion—which allows it to sit as a second jury in the case and weigh the evidence against Chavis—employs a dangerously broad harmless error analysis to sanitize serious errors by the trial court.

Therefore, because I believe the errors in this case were not harmless, I would reverse and remand for a new trial.

---

[17] The majority's analysis also overlooks the fact that Chavis elicited evidence in support of his theory that the group of Victim, mother, and sisters was falsely accusing him in order to gain ownership of his house and surrounding property.