**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Jamie L. Stroman, Appellant.

Appellate Case No. 2017-000823

———————————

Appeal From Lexington County
Robert E. Hood, Circuit Court Judge

———————————

Unpublished Opinion No. 2019-UP-281
Submitted May 8, 2019 – Filed August 7, 2019

———————————

**AFFIRMED**

———————————

Appellate Defender Kathrine Haggard Hudgins, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General Joshua Abraham Edwards, both of Columbia; and Solicitor Samuel R. Hubbard, III, of Lexington, all for Respondent.

———————————

**PER CURIAM:** Jamie Stroman appeals his convictions of two counts of criminal sexual conduct with a minor in the first degree. Stroman contends the circuit court

erred in qualifying a forensic interviewer as an expert in child abuse dynamics and disclosure without making preliminary findings as to the admission of the expert testimony pursuant to Rule 702, SCRE. Specifically, Stroman maintains the circuit court erred by (1) failing to make specific findings that delayed disclosure was beyond the ordinary knowledge of the jury and required an expert opinion; (2) failing to make specific findings that the proffered expert had the requisite knowledge and skill to qualify as an expert; and (3) failing to make specific findings as to the reliability of the testimony. We affirm.

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Rule 702, SCRE. "Expert testimony may be used to help the jury to determine a fact in issue based on the expert's specialized knowledge, experience, or skill and is necessary in cases in which the subject matter falls outside the realm of ordinary lay knowledge." *State v. Jones*, 423 S.C. 631, 636, 817 S.E.2d 268, 270 (2018) (quoting *Watson v. Ford Motor Co.*, 389 S.C. 434, 445, 699 S.E.2d 169, 175 (2010)). "In determining whether to admit expert testimony, the trial court must make three inquiries: (1) whether the evidence will assist the trier of fact; (2) whether the expert has acquired the requisite knowledge and skill to qualify as an expert in that particular subject matter, and (3) whether the substance of the testimony is reliable." *Id*. "While both scientific and nonscientific expert testimony require the trial court [to] make a finding of reliability, there is no formulaic approach for determining the reliability of nonscientific testimony." *Id*. at 638–39, 817 S.E.2d at 272.

As an initial matter, the State argues this issue is not preserved for appellate review because Stroman failed to object to the testimony of the forensic interviewer, Heather Smith, on the grounds of Smith's qualifications or the reliability of her testimony. We agree.

At the pre-trial hearing, Stroman sought to preclude Smith's testimony because he was concerned it was a "backdoor" around the holdings in *State v. Kromah*,[1] which prohibits a forensic interviewer from testifying in a manner that bolsters the credibility of the child victim. Specifically, Stroman argued,

---

[1] 401 S.C. 340, 359, 737 S.E.2d 490, 500 (2013) (finding the forensic interviewer's testimony that a three-year-old child victim had given a "compelling finding" of child abuse was the equivalent of the interviewer stating that the victim was telling the truth and, thus, was inadmissible).

[Counsel]: [T]he question that the defense community and myself, in particular, is concerned about[,] and it was a question that Justice Hearn asked, is isn't this just a way to back-door Kromah?

Stroman further elaborated on the issue,

[Counsel]: But I'm also concerned in this case, Your Honor, because this case is very unusual. And my concern is that I've read a lot of transcripts where Ms. Smith has testified and, at least, one case I know was overturned because she went way beyond.

The Court: She's in like five opinions.

[Counsel]: Right. Right. So my concern is that it continues to happen and it's going to happen here and then we're going to have to raise an appeal issue. I don't want to have to do that. I want to have a fair and clean trial.

The Court: So what, if anything, do you think Ms. Smith can testify to?

[Counsel]: I mean, she is a blind expert. She really has no knowledge of this case. What they want to do is kind of fix the problems with the case[,] and I don't believe that is proper testimony.

The Court: So your answer to that question is nothing?

[Counsel]: Correct.

The State argued that it was calling Smith because she did not have any affiliation with the case and had specialized knowledge that could assist the jury.[2] Stroman responded, "My concern is that she's going to testify to situations that mirror— that happen to hypothetically mirror this case as opposed to all— do you understand my concern?" The court acknowledged Stroman's concern and indicated it would limit Smith's testimony specifically to delayed disclosure. At no point during the pre-trial hearing did Stroman argue Smith was not qualified in the area of child abuse

---

[2] The State explained that it selected an expert witness that did not have any affiliation with the case to avoid running afoul of *Kromah*.

dynamics and disclosure or that her testimony would not be reliable. Stroman also failed to make this argument during trial when the State called Smith as a witness. Instead, once Stroman's counsel completed voir dire of Smith, counsel stated, "Your Honor, we would renew our objection previous to—what we argued previously."

It is apparent that Stroman's objection was not based on Smith's qualifications or the reliability of her testimony as an expert witness. Instead, Stroman objected—albeit untimely—to Smith testifying beyond the realm of delayed disclosure and on the veracity of the child victim. As such, the issue of Smith's qualifications and the reliability of her testimony are not preserved for appellate review. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."); *State v. Prioleau*, 345 S.C. 404, 411, 548 S.E.2d 213, 216 (2001) ("[A] party may not argue one ground at trial and an alternate ground on appeal."); *see also Wilder Corp.*, 330 S.C. at 76, 497 S.E.2d at 733 ("Moreover, an objection must be sufficiently specific to inform the trial court of the point being urged by the objector.").

Nonetheless, we find that the circuit court conducted a proper inquiry of the State's expert witness as required by Rule 702, SCRE. *See State v. White*, 382 S.C. 265, 274, 676 S.E.2d 684, 689 (2009) ("In the discharge of its gatekeeping role, a trial court must assess the threshold foundational requirements of qualifications and reliability and further find that the proposed evidence will assist the trier of fact."). Specifically, during the pre-trial hearing, the State argued that it needed to call an expert witness because "[a] lot of people don't understand the process of disclosure." The court agreed that an expert would be useful to assist the jury stating,

> [W]hen we all hear a child delayed disclosure, none of us have a panic attack about it. But people on the street—I mean, you go home—you're in the restaurant tonight and you tell seven people that a child delayed disclos[ure], they're all like that doesn't make any sense. And so—I mean, they understand the necessity for that. And I also understand the other two people can't testify to that, okay, because they can't—because of the cases that are out there. So I'm going to allow it, but I'm going to—you know, she needs to keep it confined.

The court further explained that it was placing limits on Smith's testimony, stating,

> She needs to stick to . . . delayed disclosure. This is why kids delay disclosure. This is my training in that area. I'm going to limit her.

Thus, the record shows that the circuit court made a preliminary determination as to whether the subject matter was beyond the ordinary knowledge of the jury. As such, Stroman's argument that the circuit court failed to make such a determination is without merit. *See State v. Brown*, 411 S.C. 332, 341–42, 768 S.E.2d 246, 251 (Ct. App. 2015) ("Accordingly, we find [the expert witness's] specialized knowledge of the behavioral characteristics of child sex abuse victims was relevant and crucial in assisting the jury's understanding of why children might delay disclosing sexual abuse, as well as why their recollections may become clearer each time they discuss the instances of abuse."), *overruled on other grounds by State v. Jones*, 423 S.C. 631, 638, 817 S.E.2d 268, 271 (2018).

Smith also testified to her qualifications and knowledge in the area of child abuse dynamics and disclosure. Smith testified she was a licensed professional counselor with a master's degree in counseling. Smith stated that she has worked at the Children's Advocacy Center for fourteen years and is the treatment services coordinator. Smith stated that she has conducted over 3,000 forensic interviews, counseled over 1,000 child victims, and provided training to law enforcement and prosecutors throughout the state. Smith indicated that she was previously qualified to testify in court over sixty times. Specifically, she has been qualified to testify in the areas of trauma informed care, mental health assessment of children, forensic interview techniques, and child abuse dynamics and disclosure. Smith testified that her expertise in this area was based primarily on her clinical work and forensic work with children, and that her opinions were supported by the research developed in the field of child abuse dynamics and disclosure.

Furthermore, the circuit court questioned the State as to whether Smith had any contact with Victim. The following colloquy occurred,

> The Court: So Ms. Smith hasn't seen the child?
>
> [The State]: No, sir.
>
> The Court: Ms. Smith hasn't interviewed the child?
>
> [The State]: No, sir.
>
> The Court: All right. Ms. Smith hasn't counseled the child?

[The State]: No, sir.

The Court: She really has no connection to [Victim]; is that a fair statement?

[The State]: That's a fair statement, Your Honor.

Thus, the court took additional steps to help assess the independent nature and reliability of Smith's testimony and to help reduce the risk of Smith vouching for the credibility of Victim. *See State v. Barrett*, 416 S.C. 124, 130, 785 S.E.2d 387, 390 (Ct. App. 2016) ("The better practice, however, is not to have the individual who examined the alleged victim testify, but rather to call an independent expert. To allow the person who examined the child to testify to the characteristics of victims runs the risk that the expert will vouch for the alleged victim's credibility." (emphasis omitted) (quoting *State v. Anderson*, 413 S.C. 212, 218–19, 776 S.E.2d 76, 79 (2015))). Moreover, because Smith's testimony is nonscientific there is no formulaic approach to determine its reliability. *See Jones*, 423 S.C. at 638–39, 817 S.E.2d at 272 ("While both scientific and nonscientific expert testimony require the trial court [to] make a finding of reliability, there is no formulaic approach for determining the reliability of nonscientific testimony."); *see also White*, 382 S.C. at 270 n.4, 676 S.E.2d at 686 n.4 (indicating that nonscientific expert testimony is the same as "experienced based" expert testimony); *id*. ("We note that case law uses the terms nonscientific expert testimony and experienced based expert testimony interchangeably.").

Therefore, the circuit court conducted the threshold inquiry required pursuant to Rule 702, SCRE. As such, we find the circuit court's decision to qualify Smith as an expert in child abuse dynamics and disclosure is supported by the record. *See State v. Price*, 368 S.C. 494, 498, 629 S.E.2d 363, 365 (2006) ("The decision to admit or exclude testimony from an expert witness rests within the [circuit] court's sound discretion."); *Jones*, 423 S.C. at 636, 817 S.E.2d at 270 ("A [circuit] court's ruling on the admissibility of expert testimony constitutes an abuse of discretion where the ruling is unsupported by the evidence or controlled by an error of law."); *State v. Adkins*, 353 S.C. 312, 326, 577 S.E.2d 460, 468 (Ct. App. 2003) ("The admission or exclusion of evidence is left to the sound discretion of the trial judge, whose decision will not be reversed on appeal absent an abuse of discretion.").

**AFFIRMED.**[3]

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.

**WILLIAMS, GEATHERS, and HILL, JJ., concur.**