# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Roy Lee Jones, Petitioner.

Appellate Case No. 2016-001933

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Greenville County
Robin B. Stilwell, Circuit Court Judge

---

Opinion No. 27822
Heard May 3, 2018 – Filed July 5, 2018

---

## AFFIRMED AS MODIFIED

---

Appellate Defender David Alexander and Appellate
Defender Lara M. Caudy, both of Columbia, for
Petitioner.

Attorney General Alan McCrory Wilson, Senior
Assistant Deputy Attorney General Deborah R.J. Shupe,
both of Columbia, and Solicitor W. Walter Wilkins, III,
of Greenville, for Respondent.

---

**JUSTICE HEARN:** Petitioner Roy Lee Jones appeals his convictions for first-degree criminal sexual conduct (CSC) with a minor, second-degree CSC with a

minor, and two counts of committing a lewd act on a minor.  The issues Jones raises on appeal all concern the admission of testimony from an expert witness qualified in child sexual abuse dynamics.  The court of appeals affirmed Jones's convictions. *State v. Jones*, 417 S.C. 319, 790 S.E.2d 17 (Ct. App. 2016).  Finding no reversible error, we affirm the court of appeals, but we take the opportunity to clarify the proper inquiry for determining whether a particular subject area falls outside the realm of lay knowledge, thus requiring expert testimony.

## FACTUAL BACKGROUND

Jones was charged with numerous offenses for the ongoing sexual abuse of his then-girlfriend's two daughters.  Testifying at trial, the older daughter (Daughter 1) stated the abuse began sometime in 2003 as she was entering the tenth grade. While Jones's behavior was initially limited to sexual comments about her body, Daughter 1 stated it progressed to groping and eventually to sexual intercourse.  In total, Daughter 1 estimated Jones sexually abused her over a hundred times until it came to a halt in 2009 when Jones was imprisoned for assault and battery of a high and aggravated nature.

The younger daughter (Daughter 2) testified Jones began molesting her when she was around ten years old, also beginning as touching and groping before escalating into forced sexual intercourse.  Daughter 2 claimed she told Mother about the abuse, but Mother did not take any steps to stop it.  When called to testify, Mother admitted Daughter 2 told her about the abuse, but explained she did not immediately notify the authorities after learning of the allegations because she feared they would take her children from her.

The State then presented expert testimony from Shauna Galloway-Williams, who was qualified as an expert in child sexual abuse dynamics.  Jones objected to the admission of Galloway-Williams' testimony, arguing the basis for her opinions was not reliable and that the subject matter of her testimony was not beyond the ordinary knowledge of the jury.  After the State proffered Galloway-Williams' testimony, the trial judge concluded the subject matter of her testimony was not common knowledge and determined she established sufficient reliability for her testimony.  Thus qualified, Galloway-Williams testified generally about delayed disclosure in sexual abuse cases and the response of nonoffending caregivers. Galloway-Williams did not reference the victims in this case, and after being questioned on cross-examination, stated she had never met with any of the other witnesses, including the victims and Mother.

Testifying in his own defense, Jones denied ever sexually abusing the victims and claimed the charges were brought against him in retaliation after he caught Daughter 1 stealing money from him. Jones was found guilty of first-degree CSC with a minor, second-degree CSC with a minor, and two counts of lewd act upon a child, and was sentenced to life without parole for first- and second-degree CSC and fifteen years' imprisonment for each count of lewd act. After his convictions were affirmed by the court of appeals, Jones petitioned this Court for certiorari.

## ISSUES

I. Did the court of appeals err by holding the trial court did not abuse its discretion when it qualified Galloway-Williams as an expert in child sex abuse dynamics when the subject matter of her testimony was well within the realm of lay knowledge, was highly prejudicial to Jones, and improperly bolstered the complainants' credibility?

II. Did the court of appeals err by holding the trial court did not abuse its discretion when it qualified Galloway-Williams as an expert in child sex abuse dynamics where there was insufficient evidence of the reliability of her testimony and whether those matters had ever been subjected to peer review?

## DISCUSSION

I. SUBJECT MATTER OF EXPERT TESTIMONY

Jones argues the trial judge erred in qualifying Galloway-Williams as an expert because the subject matter of her testimony was not beyond the ordinary knowledge of the jury. According to Jones, there is no field of study regarding "child sex abuse dynamics," and the State used that term to mask her actual role as a forensic interviewer.

The admissibility of an expert's testimony is a matter within the trial court's sound discretion and the determination will not be reversed on appeal absent an abuse of discretion. *State v. Cope*, 405 S.C. 317, 344–45, 748 S.E.2d 194, 208 (2013). A trial court's ruling on the admissibility of expert testimony constitutes an abuse of discretion where the ruling is unsupported by the evidence or controlled by an error of law. *Maybank v. BB&T Corp.*, 416 S.C. 541, 567, 787 S.E.2d 498, 511 (2016). Rule 702, SCRE, states, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." In determining whether to admit expert testimony, the trial court must make three inquiries: (1) whether the evidence will assist the trier of fact; (2) whether the expert

has acquired the requisite knowledge and skill to qualify as an expert in that particular subject matter, and (3) whether the substance of the testimony is reliable. *State v. Council*, 335 S.C. 1, 20, 515 S.E.2d 508, 518 (1999). "Expert testimony may be used to help the jury to determine a fact in issue based on the expert's specialized knowledge, experience, or skill and is necessary in cases in which the subject matter falls outside the realm of ordinary lay knowledge." *Watson v. Ford Motor Co.*, 389 S.C. 434, 445, 699 S.E.2d 169, 175 (2010).

Though she was admitted generally as an expert in child sex abuse dynamics, Galloway-Williams' testimony concerned two distinct concepts: delayed disclosure by sexual abuse victims and the behavior of nonoffending caregivers. As to the first area, the law in South Carolina is settled: behavioral characteristics of sex abuse victims is an area of specialized knowledge where expert testimony may be utilized. *See State v. Anderson*, 413 S.C. 212, 218, 776 S.E.2d 76, 79 (2015) ("Certainly we recognize that there is such an expertise: this is the type of expert who can, for example, testify to the behavioral characteristics of sex abuse victims."). Her testimony about delayed disclosure from sex abuse victims fits squarely within this commonly recognized category. However, the behavior of nonoffending caregivers presents a less settled question. Nevertheless, our review of the record indicates the trial judge did not abuse his discretion in finding the subject appropriate for expert testimony.[1] The State explained it was offering Galloway-Williams' testimony to educate the jurors on why a nonoffending caregiver may fail to act after learning sexual abuse was occurring, contrary to what a reasonable person would expect. Finding this testimony to be in a similar category as other behavioral testimony admissible in sexual abuse cases, the trial judge concluded it fell outside the scope of lay knowledge and was therefore admissible.[2]

---

[1] We caution this holding does not create a categorical rule establishing this as a recognized area of expertise in every case. If such an expert is challenged, the proper course of action for the trial court remains to hear a proffer of the proposed expert's testimony and determine whether the all of the requirements of Rule 702, SCRE, have been satisfied.

[2] Furthermore, although Galloway-Williams may conduct forensic interviews in her professional capacity, that fact does not bar her from qualifying as an expert witness in another area. As the trial judge properly noted, *State v. Kromah*, 401 S.C. 340, 737 S.E.2d 490 (2013), restricted the expert qualification of forensic interviewers who evaluated the victim and would then testify as to the veracity of the victim's claims. In contrast, Galloway-Williams did not evaluate or interview the victims. Staying within the confines of *Kromah* and its progeny, we find Galloway-Williams'

Although we find ample support for the trial judge's determination that the subject matter of Galloway-Williams' testimony was beyond the ken of lay knowledge, we wish to reiterate the proper test for this determination. In affirming the trial judge, the court of appeals took into consideration whether the jurors' responses during *voir dire* indicated any prior knowledge or experience with sexual abuse. As support for this holding, the court of appeals cited to *State v. Brown*, 411 S.C. 332, 768 S.E.2d 246 (Ct. App. 2015), which similarly considered jurors' *voir dire* responses an appropriate factor in determining whether a particular subject area is beyond the ken of lay knowledge. Whether the subject matter of a proposed expert's testimony is outside the realm of lay knowledge is a determination left solely to the trial judge and his or her sense of what knowledge is commonly held by the average juror. The purpose of *voir dire* is to assess a juror's individual biases and overall fitness to serve on the jury—not to probe the need for expert testimony. *See, e.g., Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991) ("*Voir dire* examination serves the dual purpose of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges."); *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981) ("*Voir dire* plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored."); *State v. Clark*, 981 S.W.2d 143, 146 (Mo. 1998) ("The purpose of voir dire is to discover bias or prejudice in order to select a fair and impartial jury."); *State v. Green*, 301 S.C. 347, 354, 392 S.E.2d 157, 161 (1990) ("The ultimate consideration is that the juror be unbiased, impartial and able to carry out the law as it is explained to him."). Accordingly, we overturn that portion of the court of appeals' opinion and *Brown* to the extent they indicate it is appropriate to evaluate the need for expert testimony based on *voir dire* responses.

## II. RELIABILITY OF TESTIMONY

Next, Jones argues it was error to admit Galloway-Williams' testimony because there was no evidence demonstrating her opinions were accurate or reliable. Specifically, Jones alleges Galloway-Williams failed to identify or name any studies

---

generalized testimony did not result in improper bolstering on behalf of the victims. Likewise, we find no error in the trial judge's prejudice analysis under Rule 403, SCRE. *See State v. Collins*, 409 S.C. 524, 534, 763 S.E.2d 22, 28 (2014) (noting a trial judge's decision regarding the comparative probative value and prejudicial effect of evidence is given great deference and only reversed in exceptional circumstances).

supporting her opinions, nor did she state whether any of the literature she relied on had been peer reviewed. With no evidence to demonstrate her reliability, Jones argues the trial judge failed to act as a gatekeeper. We disagree.

In assessing the admissibility of expert testimony, the trial court must make a threshold determination of reliability. *State v. White*, 382 S.C. 265, 273, 676 S.E.2d 684, 688 (2009). While both scientific and nonscientific expert testimony require the trial court make a finding of reliability, there is no formulaic approach for determining the reliability of nonscientific testimony. *Id.* at 274, 676 S.E.2d at 688. As the court of appeals noted, Jones relies primarily on this Court's opinion in *State v. Chavis*, 412 S.C. 101, 771 S.E.2d 336 (2015), to support his contention that Galloway-Williams' testimony was unreliable.

In *Chavis*, the trial court qualified the same forensic interviewer who evaluated the victim as an expert in the field of child abuse assessment. On appeal, the Court found the qualification was error because, although the forensic interviewer had extensive experience and training using the RATAC protocol, there was insufficient evidence demonstrating her individual reliability. The Court explained, "[T]here is simply no evidence that her conclusions or impressions taken from these interviews were accurate." *Id.* at 108, 771 S.E.2d at 339. While the Court acknowledged there is no "formulaic approach for determining . . . reliability" in nonscientific areas, "evidence of mere procedural consistency does not ensure reliability without some evidence demonstrating that the individual expert is able to draw reliable results from the procedures of which he or she consistently applies." *Id.*

Unlike the proposed expert in *Chavis*, Galloway-Williams did not testify about forensic interviewing methods nor the use of the RATAC protocol. Instead, her testimony focused on explaining the concept of delayed disclosure and the role of nonoffending caregivers in the dynamics of sexual abuse. Although Galloway-Williams did not identify by name the articles serving as the basis for her opinions, she indicated she could provide citations if given an opportunity to gather them. Additionally, she explained her opinions were supported by peer-reviewed professional journals and trade publications, all of which were uniformly accepted and recognized by child sexual abuse experts and professionals. Galloway-Williams also testified she participates in the peer review process and has given numerous presentations on the subject. When questioned on cross, she testified she was unaware of any organizations that found her methods unreliable and that, out of all cases involving delayed disclosure of child abuse, statistically two to four percent are considered false allegations.

We find Jones's argument conflates reliability with perfection. There is always a possibility that an expert witness's opinions are incorrect. However, whether to accept the expert's opinions or not is a matter for the jury to decide. Trial courts are tasked only with determining whether the basis for the expert's opinion is sufficiently reliable such that it be may offered into evidence. Here, Galloway-Williams met the threshold reliability requirement when she testified her methods were published in professional articles and trade publications, subject to peer review, and uniformly accepted and relied upon by other professionals in the field. Accordingly, we affirm the trial judge's finding.

## CONCLUSION

Based on the foregoing, the court of appeals' opinion is **AFFIRMED AS MODIFIED**.

**BEATTY, C.J., KITTREDGE, FEW and JAMES, JJ., concur.**