# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Jaron Lamont Gibbs, Petitioner.

Appellate Case No. 2020-001399

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Pickens County
Letitia H. Verdin, Circuit Court Judge

---

Opinion No. 28125
Heard March 16, 2022 – Filed January 4, 2023

---

## AFFIRMED AS MODIFIED

---

Jack B. Swerling, of Columbia, and Katherine Carruth Goode, of Winnsboro, for Petitioner.

Attorney General Alan Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody J. Brown, and Assistant Attorney General Julianna E. Battenfield, all of Columbia, and Solicitor W. Walter Wilkins, of Pickens, for Respondent.

---

**JUSTICE JAMES:** Jaron Lamont Gibbs was convicted of murder and possession of a weapon during the commission of a violent crime. He appealed, arguing the

trial court erred in (1) allowing Detective Michael Arflin to present lay testimony about single and double action revolvers and (2) allowing the State to reference Arflin's testimony in its closing argument. The court of appeals affirmed Gibbs's convictions. *State v. Gibbs*, 431 S.C. 313, 847 S.E.2d 495 (Ct. App. 2020). We affirm the court of appeals' opinion as modified.

## Background

The court of appeals' opinion presents the full background of this case. *Id.* at 316-20, 847 S.E.2d at 496-98. The following basic facts are sufficient for our review. This shooting occurred at a four-way intersection near Clemson while Gibbs was standing at the driver's side window of a vehicle occupied by Hunter Raby, Robby Porter, and Kalyn Meaders (Victims). Gibbs's revolver discharged into the car, and the bullet grazed the top of the Raby's head and struck Porter, who died the following day. Gibbs left the scene and was arrested in Atlanta two days later. The revolver was never recovered.

The central dispute at trial was whether the shooting was accidental or intentional. The State contended the shooting was intentional and stemmed from Gibbs's sale of drugs to Victims earlier that day. Raby testified Gibbs held the barrel of the revolver to the left side of his face inside the open driver's side window and told Raby he "had messed up and was really close to losing [his] life over it." Raby acknowledged that he pushed the revolver away with his palm, but he denied touching the trigger.

Gibbs conceded he held the revolver by the grip and pointed it barrel-first inside the driver's side window; however, Gibbs claimed he did so to offer the revolver as payment for a gambling debt he owed Victims. Gibbs contended the revolver discharged accidentally after Raby refused to accept the revolver and pushed it away. Gibbs testified the revolver was a "piece of junk," and he testified he was positive his finger was not touching the trigger when it discharged. Gibbs testified he left the scene because he thought no one was injured.

Gibbs argues the trial court committed reversible error in admitting a portion of lead detective Michael Arflin's testimony. Arflin testified he was familiar with revolvers, and the solicitor asked Arflin if he was familiar with how single and double action revolvers work. Gibbs objected on the ground that Arflin was not qualified as an expert in firearms. The trial court overruled his objection, stating, "He says he understands so I'm going to allow him to testify to it. If we go much further, then we'll revisit your objection." The following testimony is the first subject of this appeal:

**The State:**  Detective Arflin, how do you fire a single action gun?

**Arflin:**  The hammer has to be cocked and then you fire – you pull the trigger and it discharges.

**The State:**  Will it fire without you cocking it?

**Arflin:**  That's kind of the rule behind single action.  It has to be cocked.

**The State:**  A double action?

**Arflin:**  When you pull the trigger, the hammer both cocks and discharges.

**The State:**  Does it have a light trigger pull, a heavy trigger pull?

**Arflin:**  In double action, it's going to be a long, heavy trigger pull.

The second subject of this appeal concerns a portion of the State's closing argument that Gibbs contends the evidence presented at trial did not support.  In her closing, the solicitor stated, "[G]uns do not accidentally go off."  The solicitor also demonstrated the necessary steps for single and double action revolvers to fire.  The solicitor argued that if the gun was a single action revolver, Gibbs "[w]ould have had to have gotten out of the car, cocked it before he put it to [Raby's] head.  That's intent.  That is a conscious effort."  The solicitor then demonstrated that for a double action revolver to accidentally fire, "[Raby] would have to push the gun up like this, wrap his fingers around where the trigger is, pull it back and pull it up at the same time if this was a double action revolver.  That simply does not make sense."  Gibbs objected to this argument and demonstration, arguing there was no evidence to support the conclusion that a gun cannot accidentally discharge.  The trial court overruled the objection.  The jury found Gibbs guilty of murder and possession of a weapon during the commission of a violent crime.

**Discussion**

**A. Arflin's Testimony**

Gibbs argues Arflin's testimony about single and double action revolvers involved "scientific, technical, or other specialized knowledge" and, therefore, had to be given by an expert. *See* Rule 702, SCRE ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto in the form of an opinion or otherwise.").

Relatedly, Gibbs argues the court of appeals erroneously held Arflin's testimony was admissible under Rule 701, SCRE. Gibbs also contends the court of appeals overemphasized the significance of Arflin's personal knowledge of revolvers when it held he presented proper lay testimony. We will begin by addressing these two arguments.

1. The court of appeals did not rely on Rule 701

Gibbs argues the court of appeals erred in holding Arflin's testimony was admissible under Rule 701. The State agrees the court of appeals relied on Rule 701 in holding Arflin presented proper lay testimony, but the State argues the court of appeals reached the correct result. We disagree with both parties because it is clear the court of appeals' holding was not based on Rule 701.

Rule 701 allows a lay witness to testify in the form of "opinions or inferences" that "(a) are rationally based on the perception of the witness, (b) are helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) do not require special knowledge, skill, experience or training." Although the court of appeals acknowledged Rule 701 allows lay opinion testimony if certain criteria are met, the court of appeals did not rely on Rule 701 in holding Arflin provided proper lay testimony. The court of appeals expressly noted Arflin "never offered anything resembling an opinion . . . ." *Gibbs*, 431 S.C. at 322, 847 S.E.2d at 499. Additionally, the court of appeals did not examine the three factors that must be satisfied for lay opinion testimony to be admitted under Rule 701. Instead, the court of appeals relied on Rule 602, SCRE, in holding Arflin gave admissible lay testimony. We will discuss the propriety of that holding momentarily.

The court of appeals was correct not to rely on Rule 701, as Arflin's testimony did not fall within the confines of that rule for two primary reasons. First, Arflin's

testimony consisted only of a simple explanation of how single and double action revolvers fire. Arflin did not testify "in the form of opinions or inferences" as Rule 701 contemplates. Second, Arflin's testimony did not satisfy the first requirement of Rule 701. Rule 701 requires testimony that is based on the witness's "perception," i.e., things the witness observed firsthand in the factual underpinnings of the case—not the general or background experience of the witness. *See State v. Ostrowski*, 435 S.C. 364, 388-89, 867 S.E.2d 269, 281-82 (Ct. App. 2021). Arflin arrived at the crime scene roughly twenty minutes after the shooting; Gibbs had left the scene, and the revolver was never recovered. As such, Arflin's testimony was based on his general familiarity with revolvers—not specific perceptions or observations relative to the facts of this case. *See Hamrick v. State*, 426 S.C. 638, 648, 828 S.E.2d 596, 601 (2019) (holding lay opinion accident reconstruction testimony was not rationally based on the witness's perception because the witness "arrived on the scene forty-eight minutes after the incident occurred, and thus, he clearly did not perceive the location of the impact"); *Ostrowski*, 435 S.C. at 388-90, 867 S.E.2d at 281-82 (holding the trial court erred in admitting lay opinion testimony about the meaning of "drug jargon" because the witness was not personally involved in the surveillance and "interpreted the messages based on his 'general drug-investigation experience alone'" (quoting *United States v. Johnson*, 617 F.3d 286, 295 (4th Cir. 2010))).

2. <u>The court of appeals overstated the significance of Arflin's "personal knowledge" in holding he presented proper lay testimony</u>

As we stated above, the court of appeals relied on Rule 602, not Rule 701, in holding Arflin presented proper lay testimony. Rule 602 provides, in relevant part, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." The court of appeals held Arflin's personal knowledge of single and double action revolvers rendered his testimony proper. Citing Rule 602, the court of appeals stated that although Arflin's testimony was arguably "foreign," "[t]he key feature of lay testimony is the witness's personal knowledge, not whether the subject of the testimony is beyond the jury's ordinary experience." *Gibbs*, 431 S.C. at 321, 847 S.E.2d at 499.

Gibbs argues the court of appeals relied too heavily upon Rule 602 and Arflin's general familiarity with revolvers. Gibbs claims the distinction between lay and expert testimony "turns on whether the subject of the testimony is scientific, technical, or specialized in nature[,]" and he argues Rule 602 and the witness's personal knowledge do not change the analysis. Gibbs claims the court of appeals erred in suggesting a witness's personal knowledge can remove otherwise technical

or specialized testimony from the purview of Rule 702, SCRE.  Gibbs is correct, but that does not require reversal.

The court of appeals held Arflin presented proper lay testimony under Rule 602 because he had personal knowledge of single and double action revolvers.  That was error.  Specifically, the court of appeals' statement that "[t]he key feature of lay testimony is the witness's personal knowledge, not whether the subject of the testimony is beyond the jury's ordinary experience" is too broad.  While Rule 602 requires lay testimony to be grounded in the witness's personal knowledge, that rule does not give a lay witness license to testify about any subject simply because he has personal knowledge of the subject.  Taken to its logical extreme, under that approach, even the most complicated subject matter would be exempt from the need for expert testimony if the witness had "personal knowledge" of it.  That is not the rule.  Even if a witness has personal knowledge, the general rule is that the witness must be qualified as an expert to testify about matters requiring scientific, technical, or other specialized knowledge.  *See* Rule 702, SCRE.

We clarify that a witness's personal knowledge cannot remove testimony requiring scientific, technical, or specialized knowledge from the scope of Rule 702. We now turn to whether Arflin's testimony required Rule 702 analysis.

3. Arflin's testimony did not require Rule 702 analysis

Rule 702 provides, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, <u>may</u> testify thereto in the form of an opinion or otherwise."  (emphasis added).  Although Rule 702 states an expert witness may testify about matters involving scientific, technical, or specialized knowledge, we have held on several occasions that expert testimony is <u>required</u> when the subject matter of the testimony falls outside the realm of ordinary lay knowledge.  *Watson v. Ford Motor Co.*, 389 S.C. 434, 445-46, 699 S.E.2d 169, 175 (2010);[1] *Graves v. CAS Med. Sys., Inc.*, 401 S.C. 63, 74, 735 S.E.2d 650, 655 (2012); *State v. Jones*, 423 S.C. 631, 635-36, 817

---

[1] We rely on *Watson* in this instance for its discussion of when expert testimony is necessary to present a jury question.  We agree with Justice Few's explanation in his concurring opinion that *Watson* "was not a rewrite of the elements of Rule 702[,]" and "[t]he idea of necessity in *Watson* related to the . . . issue of whether expert testimony was required, not to the Rule 702 issue of whether expert testimony was admissible."

S.E.2d 268, 270 (2018). We have also recognized trial courts have broad discretion to determine whether the subject matter of a witness's testimony requires analysis under Rule 702. *Jones*, 423 S.C. at 636-37, 817 S.E.2d at 271. Accordingly, we must determine whether the trial court abused its discretion in concluding Arflin's testimony about single and double action revolvers was not beyond the scope of ordinary knowledge.

Gibbs argues the trial court failed to exercise any discretion in this case because it did not consider whether Arflin's testimony required analysis under Rule 702. *See State v. Hawes*, 411 S.C. 188, 191, 767 S.E.2d 707, 708 (2015) ("A failure to exercise discretion amounts to an abuse of that discretion." (quoting *Samples v. Mitchell*, 329 S.C. 105, 112, 495 S.E.2d 213, 216 (Ct. App. 1997))). Gibbs claims Arflin's testimony required Rule 702 analysis because it dealt with "the manner and mechanics of the operation and functionality of a particular kind of firearm." Gibbs contends the court of appeals acknowledged that the subject matter of Arflin's testimony was outside the knowledge base of ordinary jurors when it stated, "[T]his subject matter may have been foreign to some members of the jury[.]" *Gibbs*, 431 S.C. at 321, 847 S.E.2d at 499.

The State, on the other hand, contends Arflin's testimony was within the common knowledge of most laypersons and "simply was not complicated enough to trigger Rule 702." The State claims the trial court recognized the low level of complexity of Arflin's testimony and properly concluded Rule 702 analysis was unwarranted. We agree with the State.

When the trial court overruled Gibbs's objection, it indicated it would restrict Arflin from providing anything more than a rudimentary explanation of how single and double action revolvers work: "We'll just see how far [Arflin's testimony] goes. I don't know if we're going much further with this. . . . If we go much further, then we'll revisit your objection." While the trial court did not specifically rule that Arflin's testimony was within the realm of ordinary knowledge, it is apparent the trial court concluded limited testimony about how single and double action revolvers fire did not require Rule 702 analysis. The trial court clearly understood certain subjects require Rule 702 analysis, as two prosecution witnesses—a SLED gunshot residue and trace evidence expert and a forensic pathologist—were offered as experts and pronounced qualified by the trial court. Although the better practice is for the trial court to make a specific finding that the challenged testimony is not outside the realm of ordinary knowledge, the lack of an explicit finding does not require reversal here.

Having concluded the trial court exercised some discretion in allowing Arflin's testimony, we must now decide whether the trial court exercised that discretion appropriately. The elementary content of Arflin's testimony is the key to this inquiry. Arflin briefly described how single and double action revolvers fire. He explained that a single action revolver will not fire before the hammer is cocked, and he explained that a double action revolver both cocks and fires when the trigger is pulled. Arflin also explained that double action revolvers require a "long, heavy trigger pull."

The trial court did not abuse its discretion in determining expert testimony was not required. We agree with the court of appeals' description of Arflin's testimony as "nothing more than the most rudimentary explanation of how someone discharges a revolver." *Gibbs*, 431 S.C. at 322, 847 S.E.2d at 499. In a different context, we have noted that it is proper for trial courts to assess the level of complexity presented by the testimony when deciding whether expert testimony is required. *See Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 153-54, 747 S.E.2d 468, 481 (2013) (stating expert testimony is not required to establish the standard of care for the operation of a landfill "where a lay person can comprehend and determine an issue without the assistance of an expert" and noting trial courts should assess "the complexity and technical nature of the evidence" when determining whether a particular subject requires expert testimony). Even when subject matter is at the periphery of ordinary knowledge, expert testimony is not required when a witness can give an explanation of the concept that a reasonable juror can grasp instantly. Here, Arflin's testimony was so rudimentary that a reasonable juror could immediately understand it.

Finally, Gibbs's reliance on the court of appeals' statement that this subject matter may have been "foreign" to members of the jury is misplaced. As we explained above, because the court of appeals held Arflin's personal knowledge rendered the lay testimony proper, it did not squarely address whether the trial court erred in finding this subject matter was not outside the ordinary knowledge of most jurors. In any event, we have explained that the trial court did not abuse its discretion in finding the testimony did not have to be given by an expert. We affirm the court of appeals as modified and hold the trial court did not err in admitting Arflin's lay testimony.

## B. Closing Argument

"The State's closing arguments must be confined to evidence in the record and the reasonable inferences that may be drawn from the evidence." *Vasquez v. State*, 388 S.C. 447, 458, 698 S.E.2d 561, 566 (2010). "A solicitor has a right to state his

version of the testimony and to comment on the weight to be given such testimony." *Randall v. State*, 356 S.C. 639, 642, 591 S.E.2d 608, 610 (2004).

The court of appeals held the trial court did not err in allowing the solicitor to state during closing argument that "guns do not accidentally go off." *Gibbs*, 431 S.C. at 322-23, 847 S.E.2d at 499-500. The court of appeals also held the solicitor's demonstration—in which she explained what would have to happen for a single or double action revolver to fire—was proper. Gibbs argues that if Arflin's testimony about single and double action revolvers was erroneously admitted, there was no evidence upon which the statement and demonstration could have been based. Gibbs further claims that even if Arflin's testimony was properly admitted, the testimony did not provide evidentiary support for the closing argument that guns do not accidentally discharge.

We agree with the court of appeals' analysis of this issue and hold the statement that "guns do not accidentally go off" was permissible advocacy. The solicitor's statement was imprecise, as the court of appeals noted, because Arflin was never asked about the possibility of a gun misfiring due to manufacturing defect or improper handling; however, considering the solicitor's closing in context, the statement was a permissible argument about how the jury should apply Arflin's testimony to the facts of the case. The solicitor immediately followed her statement with an explanation of why it was highly unlikely that the shooting was accidental. The solicitor stated that if Gibbs had a single action revolver, he would have had to cock it before it would fire—demonstrating malice. The solicitor explained that if Gibbs had a double action revolver, it would fire accidentally only if Raby had wrapped his finger around the trigger and pulled.

Additionally, the solicitor's statement was made in response to Gibbs's testimony that the gun went off accidentally. Gibbs testified he was positive his finger was not on the trigger when the gun fired, and one theory of his defense was that Raby accidentally pressed the trigger. The solicitor's statement was certainly proper when viewed as a reply to Gibbs's theory of the case. Under the invited reply doctrine, conduct that would be improper otherwise may be appropriate if made in response to statements or arguments made by the defense. *Vaughn v. State*, 362 S.C. 163, 169, 607 S.E.2d 72, 75 (2004). We affirm the court of appeals' sound analysis and hold the trial court did not err with respect to the solicitor's closing argument.

## Conclusion

For the foregoing reasons, we affirm the court of appeals' opinion as modified.

**AFFIRMED AS MODIFIED.**

**KITTREDGE, J., concurs.  FEW, J., concurring in in a separate opinion in which HEARN, J., concurs.  HEARN, J., concurring in result only in a separate opinion in which BEATTY, C.J., concurs.**

**JUSTICE FEW:**  I appreciate the majority's thoughtful discussion of the intriguing question of how to analyze Detective Arflin's explanation of how single- and double-action revolvers work.  While I agree his testimony is clearly not lay opinion under Rule 701, SCRE, whether it should be treated as "specialized knowledge" under Rule 702, SCRE, is a more difficult question.  The line separating what the majority calls "ordinary knowledge" and what Rule 702 calls "specialized knowledge" is not a bright line, and trial courts must—as the majority explains—conduct the type of thorough analysis shared by the majority to determine how to treat any particular testimony.  In my view, however, Detective Arflin's explanation is specialized knowledge.  Thus, I would have analyzed the testimony under Rule 702.  Detective Arflin gained this knowledge through his experience, training, and education as a law enforcement officer.  He was, therefore, an "expert" on the subject of how single- and double-action revolvers are fired.  While I would have required Detective Arflin to provide a bit more explanation of the basis of his knowledge, I would have reached the same conclusion reached by the trial court, the court of appeals, and the majority of this Court: the testimony was admissible.

Also, I agree with Justice Hearn that *Babb v. Lee County Landfill SC, LLC*, 405 S.C. 129, 747 S.E.2d 468 (2013) is not directly applicable.  The question before the Court in *Babb* was whether the plaintiff on a negligence claim against a landfill operator was required to present expert testimony to establish the standard of care.  405 S.C. at 153, 747 S.E.2d at 481.  The question before the Court in this case is whether the evidence that was presented was required to be analyzed under Rule 702 as expert testimony.  The point of law at issue in *Babb* and the point we address in this case are related, but they are not the same.  The difference—though subtle—is important.  In *Babb* and other cases in which the issue is whether expert testimony is required, whether the subject matter of the testimony is beyond the knowledge of a lay juror is dispositive.  *See Babb*, 405 S.C. at 153, 747 S.E.2d at 481 (stating "where a subject is beyond the common knowledge of the jury, expert testimony is required").  In this case and other cases in which the issue is whether expert testimony should be admitted, whether the testimony is beyond the knowledge of a lay juror is relevant to the Rule 702 element that the testimony must "assist the trier of fact," but it is not dispositive of whether that element is satisfied or whether the testimony is admissible.

In some prior cases, we addressed both issues—the necessity and admissibility of expert testimony—at the same time.  Statements we made in doing so—correct statements in those cases—can be confusing in a case in which the sole issue is the admissibility of expert testimony.  In *Watson v. Ford Motor Company*, 389 S.C. 434, 699 S.E.2d 169 (2010), for example, both questions were before the Court.  Initially,

this Court analyzed whether the testimony of two experts was admissible under Rule 702 and found the trial court erred in admitting the testimony of both experts. 389 S.C. at 448, 452, 699 S.E.2d at 176, 178. The question then became whether the jury verdict for the plaintiff could stand without expert testimony to support it. The Court concluded expert testimony was required, and reversed the jury's verdict. 389 S.C. at 452-53, 699 S.E.2d at 178-79. In the course of explaining those two holdings, the Court stated, "the trial court must make three key preliminary findings which are fundamental to Rule 702 . . . [, including], the trial court must find that the subject matter is beyond the ordinary knowledge of the jury, thus requiring an expert to explain the matter to the jury." 389 S.C. at 446, 699 S.E.2d at 175. The statement was a correct expression of the Court's resolution of the two issues before it, but it was not a rewrite of the elements of Rule 702 as some have interpreted it. *See State v. Council*, 335 S.C. 1, 20, 515 S.E.2d 508, 518 (1999) (finding the elements for the admissibility of expert testimony derive from Rule 702 and stating, "the trial judge must find the evidence will assist the trier of fact, the expert witness is qualified, and the underlying science is reliable"). The idea of necessity in *Watson* related to the *Babb* issue of whether expert testimony was required, not to the Rule 702 issue of whether expert testimony was admissible.

In this case, I have no problem with the majority using *Babb* to illustrate part of its analysis, but whether expert testimony was required in this case is not an issue. The State was clearly not *required* to present expert testimony to establish guilt. Once the State chose to present Detective Arflin's explanation of how single- and double-action revolvers work, however, the question became how the trial court should analyze the admissibility of the testimony. As the majority points out, this involves the trial court's discretion. As I have explained, I would have analyzed the testimony under Rule 702. In that analysis, there would be no consideration of necessity.

With these small differences, I concur in the majority opinion.

**HEARN, J., concurs.**

**JUSTICE HEARN:** Like Justice Few, I join in the majority's thorough discussion of the import of Rules 602, 701, and 702, SCRE. However, I disagree with the majority's reliance on *Babb v. Lee County Landfill SC, LLC*, 405 S.C. 129, 153-54, 747 S.E.2d 468, 481 (2013) as support for the trial court's decision to permit Detective Arflin to testify about the difference between single- and double-action revolvers. Trial courts must analyze whether a witness is testifying to something that requires specialized knowledge or not per Rule 702, SCRE. The "common knowledge exception" as articulated in *Babb* applies to proving deviations from the standard of care in negligence actions and is inapplicable here.

In *Babb*, this Court answered five certified questions from the federal district court related to odors emanating from a landfill. *Id.* at 136-37, 747 S.E.2d at 472. The plaintiffs sought recovery through various legal avenues, and we clarified that South Carolina nuisance law did not permit recovery where no physical invasion had occurred. *Id.* at 144-52, 747 S.E.2d at 476-80. We acknowledged that while such facts *could* alternatively give rise to negligence action, plaintiffs must allege a breach in the standard of care, likely through the use of an expert. *Id.* at 153-54, 747 S.E.2d at 481. Experts may not be required, we noted, when the common knowledge exception applies. *Id.* at 153, 747 S.E.2d at 481 ("'the common knowledge exception to the requirement of expert testimony in proving negligence depends on the particular facts of the case.' *Sharpe v. S.C. Dept. of Mental Health*, 292 S.C. 11, 14, 354 S.E.2d 778, 780 (Ct. App. 1987).")[2]

---

[2] The "common knowledge exception" is almost exclusively seen in negligence cases whereas the determination of whether an expert is required under Rule 702 deals with what the jurors understand without possessing specific specialized knowledge. *See, e.g.*, *O'Leary-Payne v. R.R. Hilton Head, II, Inc.*, 371 S.C. 340, 349, 638 S.E.2d 96, 101 (Ct. App. 2006) ("[E]xpert testimony is not necessary to prove negligence or causation so long as lay persons possess the knowledge and skill to determine the matter at issue." (quoting F. Patrick Hubbard & Robert L. Felix, The Law of South Carolina Torts 167 (2d ed. 1997))); *Pederson v. Gould*, 288 S.C. 141, 142, 341 S.E.2d 633, 634 (1986) ("Expert testimony is not required, however, in situations where the common knowledge or experience of laymen is extensive enough for them to be able to recognize or infer negligence on the part of the doctor and also to determine the presence of the required causal link between the doctor's actions and the patient's medical problems."); *King v. Williams*, 276 S.C. 478, 483, 279 S.E.2d 618, 620 (1981) ("The law is well-established that expert testimony is not required where the common knowledge or experience of laymen is capable of inferring lack of proper care and also the required causal link."); *but see State v. Jones*, 423 S.C.

As used by the majority, the isolated quotation from *Babb* would use an exception, known in the world of negligence actions, as support for general exception for the use of experts in any case—that is a bridge too far. I agree with Justice Few that this case presents a close question as to whether an expert was required to explain the facts in evidence under Rule 702 and would therefore affirm based on the discretion afforded trial courts in evidentiary rulings. However, I disagree that the common knowledge exception articulated in our civil jurisprudence is applicable here. Accordingly, I concur in result only.

**BEATTY, C.J., concurs.**

---

631, 638, 817 S.E.2d 268, 271 (2018) (noting in a delayed disclosure case involving criminal sexual conduct, whether the subject matter requires expert testimony is best left to the trial court's "sense of what knowledge is commonly held by the average juror").