# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Richard Kenneth Galloway, Petitioner.

Appellate Case No. 2022-000914

———————

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

———————

Appeal from Greenville County
Perry H. Gravely, Circuit Court Judge

———————

Opinion No. 28225
Heard March 27, 2024 – Filed July 31, 2024

———————

## AFFIRMED

———————

Appellate Defender Joanna Katherine Delany, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson and Assistant Attorney General Joshua Abraham Edwards, both of Columbia; and Solicitor William W. Wilkins, III, of Greenville, all for Respondent.

———————

**JUSTICE FEW:**  Richard Kenneth Galloway was convicted of sexually assaulting his girlfriend's daughter.  We granted Galloway's petition for a writ of certiorari to address three issues.  We now address two of those issues—whether the trial court erred by excluding expert testimony offered by Galloway concerning potential "false memories" on the part of the victim and whether the trial court erred by admitting testimony from the State that Galloway was violent toward the victim's mother.  We dismiss the writ as to the third issue.  We affirm the court of appeals.

## I.      Facts and Procedural History

In 2016, the victim sent a letter to the Greenville City Police Department alleging Galloway sexually abused her between 1988 and 1990.  The victim was in elementary and middle school at the time of the crimes.  She was thirty-seven years old when she reported the abuse to the police and thirty-nine years old at the time of trial.

At trial, the victim testified the first instance of sexual abuse occurred during the summer before she started the fourth grade.  Galloway was in a relationship with the victim's mother, Patricia Waldrop, and babysat her and her younger brother while Waldrop worked the night shift at a gas station convenience store.  At the time, Galloway was staying at a motel and renting a room with one bed.  The victim testified that one night she and her brother were staying with Galloway and sleeping in the bed when Galloway got into the bed, rolled over to the victim, and reached his hand into her underwear.  She testified Galloway "spent some time fondling" her.  The next morning, the victim told Waldrop about what happened, and Galloway did not babysit the victim or her brother for "a long time."

Waldrop continued seeing Galloway, however, and later moved the victim and her brother into Galloway's home during the middle of the victim's fourth grade year.  The victim testified about multiple incidents of sexual abuse that occurred during the two years she lived in Galloway's home.  She testified Galloway—on more than one occasion—watched her while she was showering, fondled her breasts and vagina, and performed oral sexual assaults on her.  The victim did not tell Waldrop about the abuse during this time.

Waldrop moved the victim and her brother out of Galloway's home and into her mother's home during the victim's sixth grade year.  However, Waldrop's mother and stepfather were "violent alcoholics," which caused Waldrop to "second-guess" her

decision to leave Galloway. The victim—upon learning Waldrop was considering moving back in with Galloway—disclosed the ongoing sexual abuse to Waldrop. Waldrop then confronted Galloway about the abuse, but neither she nor the victim reported it to the police. Waldrop did not move the victim and her brother back into Galloway's home, and Waldrop testified the last time the family saw Galloway was around 1991—when the victim was in the seventh grade.

In 2016—approximately twenty-five years after her last encounter with Galloway—the victim wrote the letter to the police alleging Galloway sexually abused her when she was a child. Galloway was arrested and charged with three counts of first-degree criminal sexual conduct with a minor and one count of lewd act upon a child.[1] After a trial, the jury convicted Galloway on two of the four charges: one count of first-degree criminal sexual conduct with a minor and one count of lewd act upon a child. The jury acquitted Galloway of the second count of first-degree criminal sexual conduct with a minor, but could not reach a verdict on the third count. The trial court sentenced him to consecutive sentences of thirty years in prison for first-degree criminal sexual conduct and ten years for lewd act upon a child. Galloway appealed his convictions, and the court of appeals affirmed. *State v. Galloway*, 436 S.C. 453, 872 S.E.2d 646 (Ct. App. 2022). We granted Galloway's petition for a writ of certiorari.

## II.    Admissibility of Expert Testimony

The victim testified at trial she had been diagnosed with schizoaffective disorder and was treated for it at a hospital in 2012. She also testified she was diagnosed with post-traumatic stress disorder and she had suffered from "sleep deprivation, immune problems, fatigue, [and] mental problems" since the late 1980s. Neither party called an expert to testify the victim actually had either of the disorders. However, Galloway called Dr. David Price—a forensic psychologist and forensic neuropsychologist—to testify in general about post-traumatic stress disorder and schizoaffective disorder and that both disorders are associated with false memories.

---

[1] At the time Galloway committed these crimes, "lewd act upon a child" was codified at section 16-15-140 of the South Carolina Code (2003) (repealed 2012). The same conduct is now classified as criminal sexual conduct with a minor in the third degree. S.C. Code Ann. § 16-3-655(C) (2015).

Price did not personally evaluate the victim and explained he had not discussed the particular case "in great detail" even with Galloway's counsel.

The State objected to Price's testimony, so the trial court had Price testify outside the presence of the jury. Price testified a person diagnosed with post-traumatic stress disorder could experience "anxiety symptoms, insomnia, [and] disruption [in] concentration . . . ." According to Price, these symptoms could have "an impact on memory" and could cause people with the disorder to "distort" memories or "avoid any recollection of [them] because it's so painful or disturbing." He testified that post-traumatic stress disorder "could . . . have an effect on [the person's] ability to relate what happened objectively." Price also testified about schizoaffective disorder. Price testified false memories "can be associated more [with] schizoaffective disorder than post-traumatic stress disorder." He noted, "schizoaffective people have thought disorders," which "can cause false memories." Price testified further that a person with schizoaffective disorder "can have" false memories.

Price stated he was prepared to testify that "false memories actively produce false allegations in criminal court," and it "happens enough to be a concern." However, Price agreed he would not be "testifying about anything in detail with [the victim]." He could not testify about "anything in [the victim's] past or her current status that would make her more amenable to false memories." Price explained, "If I was going to render an opinion about her specifically, I would either evaluate her or review all of her records, medical records, and things of that nature."

Analyzing the elements of Rule 702 of the South Carolina Rules of Evidence, the trial court found Price "qualified as an expert" in psychology. Focusing on the element of reliability, however, the trial court excluded any testimony about false memories, stating,

> I am not going to allow testimony on this whole false memory syndrome or whatever it's called, you could open the door for every single case from that. So, I'm not going to allow anything regarding false memory since he has not evaluated this particular person . . . .

Galloway argues the trial court erred by excluding Price's testimony on false memories. First, he argues the trial court failed to properly perform a Rule 702

analysis and misapplied the reliability requirement. Second, he argues the ruling was improper because the State's expert was allowed to give similar testimony and thus Galloway was denied the right to present evidence in his defense.

### 1. Rule 702, SCRE

"To admit expert testimony under Rule 702, the proponent . . . must demonstrate, and the trial court must find, the existence of three elements: 'the evidence will assist the trier of fact, the expert witness is qualified, and the underlying science is reliable.'" *State v. Wallace*, 440 S.C. 537, 544, 892 S.E.2d 310, 313 (2023) (quoting *State v. Council*, 335 S.C. 1, 20, 515 S.E.2d 508, 518 (1999)). We will not reverse the trial court's determination whether the proponent demonstrated the existence of these three elements unless we find the trial court acted outside its discretion in making the required findings. *State v. Jones*, 423 S.C. 631, 636, 817 S.E.2d 268, 270 (2018); *see also Wallace*, 440 S.C. at 541-42, 892 S.E.2d at 312 ("We will not reverse a trial court's ruling on [expert testimony] unless . . . we find the trial court has not acted within the discretion we grant to trial courts." (citing *State v. Williams*, 430 S.C. 136, 149, 844 S.E.2d 57, 64 (2020))).

### i. Reliability

Under the reliability element of the Rule 702 analysis, a trial court must determine "whether the basis for the expert's opinion is sufficiently reliable such that it may be offered into evidence." *Jones*, 423 S.C. at 640, 817 S.E.2d at 272. Our court of appeals has explained that there are subparts to this determination, such that a trial court must "assess not only (1) whether the expert's *method* is reliable . . . , but also (2) whether the *substance* of the expert's testimony is reliable." *State v. Warner*, 430 S.C. 76, 86, 842 S.E.2d 361, 365 (Ct. App. 2020), *aff'd*, 436 S.C. 395, 872 S.E.2d 638 (2022). Justice Hill—writing *Warner* as a member of the court of appeals—continued, "As long as the trial court is satisfied the expert's testimony consists of a reliable method faithfully and reliably applied, the gate of admissibility should be opened." 430 S.C. at 86-87, 842 S.E.2d at 366. The federal counterpart to our Rule 702 also breaks down the reliability analysis into subparts, requiring the trial court find the testimony: (1) "is based on sufficient facts or data;" (2) "is the product of reliable principles and methods;" and (3) "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702 (b)-(d). Although

South Carolina "has not adopted *Daubert*[2] . . . by name, nor has it revised Rule 702, SCRE, to incorporate the *Daubert* framework . . . , our approach is 'extraordinarily similar' to the federal test." *Warner*, 430 S.C. at 86, 842 S.E.2d at 365-66 (quoting Roger M. Young, How Do You Know What You Know?, S.C. Law., Nov. 2003, at 29, 31); *see also State v. Phillips*, 430 S.C. 319, 341, 844 S.E.2d 651, 662 (2020) (equating *Daubert* with our Rule 702 analysis under *Council*).

Under Rule 702, therefore, to the extent Price's testimony should be viewed as an opinion on whether this particular victim was likely to have false memories, the trial court was required to ensure the scientific principle—post-traumatic stress and schizoaffective disorder patients are more likely to have false memories—was reliably applied to this victim's situation. On this point, the trial court was correct to focus on the fact Price never evaluated the victim and knew very little detail about her. As stated earlier, Price conceded, "If I was going to render an opinion about her specifically, I would either evaluate her or review all of her records, medical records, and things of that nature." The court of appeals was also correct to state as to its reliability analysis, "Price stated he would need to evaluate Victim, or at least review her records, to opine on whether Victim's memories of the alleged abuse were false." *Galloway*, 436 S.C. at 463, 872 S.E.2d at 651-52.

We hold the trial court did not err in excluding Price's testimony under Rule 702 because his theory that schizoaffective disorder can cause false memories—while arguably reliable in the abstract—was not reliably applied to the victim or to the facts of this case.

### ii.        Assisting the Trier of Fact

On appeal, however, Galloway argues the trial court's and the court of appeals' reliability analysis is misplaced because Price's testimony was not offered as an opinion on whether the victim had false memories, but as abstract scientific knowledge relating to post-traumatic stress and schizoaffective disorders in general. In fact, Price explained at trial, "I'm here as a blind expert testifying about these disorders. I'm not testifying about anything in detail with [the victim]." In his brief, Galloway argued, "Price was offered as a 'blind' expert. He was not offered to opine

---

2 *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

on whether [the victim's] claims were true, but to instead give the jury relevant information . . . ."  At oral argument, Galloway's counsel stated, "This is a 'blind education witness.'  This testimony is not about her.  This is about schizoaffective disorder.  We are trying to present just the testimony in general that schizoaffective disorder can cause false memories."

In this way, Galloway likens the testimony to that of a child sex abuse dynamics expert testifying for the State about behavioral characteristics of sex abuse victims, such as the reasons a victim might delay disclosure of a sexual assault.  *See Jones*, 423 S.C. at 636, 817 S.E.2d at 271 (stating "the law in South Carolina is settled: behavioral characteristics of sex abuse victims is an area of specialized knowledge where expert testimony may be utilized").  We have actually encouraged the use of "blind" experts on these issues.  *See State v. Anderson*, 413 S.C. 212, 218, 776 S.E.2d 76, 79 (2015) ("The better practice, however, is not to have the individual who examined the alleged victim testify, but rather to call an independent expert.").  We agree with Galloway that using an expert to present abstract specialized knowledge rather than a specific opinion relating directly to the particular case changes the admissibility analysis.  In such a situation, the reliable application of the applicable principle or method to the facts of the individual case becomes less important.  In its place, however, the question of whether the testimony "will assist the trier of fact" becomes more important.[3]

Turning to that question, it is clear the particular testimony in this case would not assist the trier of fact.  There was no way the jury could use the knowledge that schizoaffective disorder "can" cause false memories other than to speculate whether the disorder might have done so in this instance.  Price's testimony is different from, for example, knowledge that sexual assault victims often delay disclosure of the abuse, and for what reasons.  First, this type of testimony would be admissible in cases in which it relates to the specific fact in that particular case that there was a lengthy delay, and to respond to the implied if not express argument that the delay demonstrates the victim's lack of credibility.  That information gives the jury a tool

---

[3] We do not intend to alter the Rule 702 analysis for so-called "blind" experts.  Rather, we emphasize—as has always been the case—"the proponent . . . must demonstrate, and the trial court must find . . . 'the evidence will assist the trier of fact . . . .'"  *Wallace*, 440 S.C. at 544, 892 S.E.2d at 313 (quoting *Council*, 335 S.C. at 20, 515 S.E.2d at 518).

to use in evaluating whether that particular victim is being truthful about what happened or made up the accusation later for some other purpose. Here, the abstract fact that "some" people with schizoaffective disorder "can" have false memories gives the jury nothing it can use to determine this victim's credibility other than to guess. *See* 31A Am. Jur. 2d *Expert and Opinion Evidence* § 23 (2012) ("In order for expert testimony to be admissible, the testimony must be relevant to . . . the task at hand in that it logically advances a material aspect of the proposing party's case."). If abstract specialized knowledge is not connected to the facts of the particular case, the jury has no basis on which to use the knowledge except to speculate whether it could have played a role in the case. *See* 31A Am. Jur. 2d *Expert and Opinion Evidence* § 22 (2012) ("Expert opinion which is speculative, conclusory, or unsubstantiated by facts in the record is of no assistance to the jury in rendering its verdict and therefore is inadmissible."). In such an instance—as here—the knowledge will not assist the trier of fact, and is therefore not admissible.

We are certainly not prepared to rule that a defendant may never present an expert to testify about false memories or other issues regarding memory. In fact, we are confident that when the proper foundation is laid, such testimony could be admissible. Here, however, the trial court did not err in excluding Price's testimony because it would not assist the trier of fact in understanding the evidence or determining whether the victim's testimony is credible.[4]

## 2. The Defendant's Right to Present Testimony

Galloway also argues it was improper for the trial court to exclude Price's testimony on false memories because the trial court permitted the State's child sexual abuse dynamics and delayed disclosure expert to testify about how trauma impacts memory.[5] In particular, the State's expert was permitted to testify that sexual abuse

---

[4] The court of appeals also analyzed the admissibility of Price's testimony under Rule 403, SCRE, finding "its probative value would have been substantially outweighed by the possibility that it would confuse the issues or mislead the jury." *Galloway*, 436 S.C. at 463, 872 S.E.2d at 652. We need not address this ruling because (1) the State did not object on the basis of Rule 403 and does not seriously argue it on appeal, and (2) our Rule 702 analysis is sufficient to affirm the trial court's ruling.

[5] In his brief, Galloway argued the trial court's ruling to exclude Price's testimony while admitting similar testimony from the State was "manifestly arbitrary,

victims "may not be able to share every single detail of the abuse" and that "we would expect that as time goes on, they may not be able to remember all of the details of time, date." She testified, "to expect that a child, or even an adult can remember the time and date of specific events, traumatic events may be very challenging. . . . We might be able to place it in context . . . but to actually be able to remember the exact month, day, year and time that something happened can be very difficult." Galloway relies on the due process notion that a criminal defendant has a right to present evidence. *See Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049, 35 L. Ed. 2d 297, 312 (1973) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense.").

Galloway makes a fair point. This Court has struggled with the parameters for admitting the testimony of the State's child sex abuse dynamics experts,[6] and we will certainly continue to do so. However, while we recognize it may seem to be error for the State to provide expert testimony on a similar matter, the State's expert testimony about how trauma impacts memory provides no basis for determining whether Price's memory-based testimony should also be admitted. Inadmissible expert testimony does not become admissible merely because similar testimony is admitted by the opposing side. Rather, the testimony of each expert must be analyzed under Rule 702. Price's testimony did not satisfy the foundational requirements of Rule 702 and, therefore, its exclusion was not outside the discretion of the trial court. *See Chambers*, 410 U.S. at 302, 93 S. Ct. at 1049, 35 L. Ed. 2d at 313 ("In the exercise of [the right to present witnesses in his defense], the accused, as is required of the State, must comply with established rules of . . . evidence . . . .").

---

unreasonable, and unfair." Subsequent to Galloway filing the brief, we overruled several cases using the "manifestly arbitrary, unreasonable, or unfair" language to explain when a trial court's ruling is outside its discretion. *See Wallace*, 440 S.C. at 542 n.3, 892 S.E.2d at 313 n.3 (stating, "we reject the ['manifestly arbitrary, unreasonable, or unfair'] explanation of what is outside of a trial court's discretion," and overruling in part twelve cases that used the explanation).

[6] *See, e.g.*, *Briggs v. State*, 421 S.C. 316, 322-33, 806 S.E.2d 713, 716-22 (2017) (discussing the cases in which this Court has "struggled" to determine when this type of testimony is an improper comment on the veracity of the victim).

### III.    Testimony About Galloway's Other Crimes, Wrongs, or Acts

Galloway argues the trial court erred by admitting testimony about his violence toward Waldrop, claiming the evidence of his "other crimes, wrongs, or acts" should have been excluded under Rule 404(b), SCRE.  He also argues the trial court erred by failing to conduct a Rule 403, SCRE, balancing as to this evidence.  We find no reversible error.

At trial, the State asked the victim to describe the relationship between Galloway and Waldrop.  The victim responded, "there was no progression of things getting worse, there was just—it got bad fast, there would be physical fights."  Galloway objected, citing Rule 404(b).  In response, the State asserted it "[did] not seek to admit this evidence under 404(b)," and, "This is not common scheme or plan evidence . . . .  This is relevant evidence."

The trial court overruled Galloway's objection without explanation, and the victim testified Galloway was violent, angry, and had physical altercations with Waldrop.  The victim described one occasion in which Galloway and Waldrop were in a "really bad" fight and the victim tried to call 911.  Galloway realized the victim was attempting to call the police and told her that "he would kill [her] mom" if she made the call.

####    1.       Rule 404(b), SCRE

Rule 404(b) provides that evidence of "other crimes, wrongs, or acts" may not be admitted for the purpose of "prov[ing] the character of a person in order to show action in conformity therewith."  "The rule is often stated in terms of 'propensity.'" *State v. Perry*, 430 S.C. 24, 29, 842 S.E.2d 654, 657 (2020).  Thus, evidence of other crimes, wrongs, or acts is not admissible for the purpose of proving the defendant has a propensity to commit the charged crime.  430 S.C. at 30, 842 S.E.2d at 657 (quoting *State v. Fletcher*, 379 S.C. 17, 26, 664 S.E.2d 480, 484 (2008) (Toal, C.J., dissenting)).  However, "Propensity evidence is admissible if offered for some purpose other than to show the accused is a bad person or he acted in conformity with his prior convictions."  *State v. Benton*, 338 S.C. 151, 156, 526 S.E.2d 228, 230 (2000) (citation omitted); *see also* Rule 404(b), SCRE (stating the evidence "may . . . be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent").

Here, the State failed to provide an on-the-record explanation as to why the evidence of Galloway's physical violence towards Waldrop is admissible over Galloway's 404(b) objection—it simply stated the evidence was relevant. While the State was correct in asserting the abuse towards Waldrop is "relevant evidence," it should have explained the legitimate purpose for which the testimony was offered and why offering it for that purpose is not prohibited by Rule 404(b). Until the State explains a valid purpose for offering evidence of other crimes, wrongs or acts, there is no basis for the trial court to overrule the objection. Therefore, the trial court erred by not requiring the State to provide a proper explanation before it overruled Galloway's objection.

Nevertheless, we hold that it was not error for the trial court to admit the testimony about Galloway's violence because it is clear the State did not elicit the testimony for the purpose of demonstrating Galloway's propensity to be *sexually* violent. Instead, the State offered the evidence to explain why the victim did not disclose the abuse when she was a child. *See State v. Smith*, 391 S.C. 353, 361-62, 705 S.E.2d 491, 495 (Ct. App. 2011) ("When the State adequately explains how the evidence of the other act logically connects to an issue in the case, it demonstrates how the judge or jury can use the evidence without using it for the prohibited purpose of inferring guilt from the defendant's propensity to commit the crime."), *rev'd on other grounds by State v. Smith*, 406 S.C. 215, 750 S.E.2d 612 (2013). The victim's testimony about Galloway's violence in the home—especially the violence towards Waldrop— provides insight into the relationship between Galloway, Waldrop, and the victim. Galloway was physically violent towards Waldrop and—on at least one occasion— threatened to kill Waldrop if the victim called the police. This is evidence the victim may have been scared to tell police about any of Galloway's crimes, let alone the sexual abuse she endured. Therefore, the admission of the victim's testimony about Galloway's violence towards Waldrop was permissible under Rule 404(b) because it was offered for the proper purpose of explaining the victim's delayed disclosure rather than for the improper purpose of showing Galloway's propensity to be violent.

### 2. Rule 403

We have explained, however, that evidence of other crimes, wrongs, or acts has an "inherent tendency to serve the improper purpose" of showing propensity. *Perry*, 430 S.C. at 31, 842 S.E.2d at 657-58. This is the reason the trial court is required to conduct a Rule 403 balancing to "determine whether the evidence has sufficient probative force for serving the legitimate purpose that the evidence should be

admitted, despite its inherent tendency to serve the improper purpose." *Id.* As we have explained, "Even if . . . evidence" of other crimes, wrongs, or acts is offered for a valid purpose, "it must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant." *State v. Clasby*, 385 S.C. 148, 155-56, 682 S.E.2d 892, 896 (2009) (quoting *State v. Gaines*, 380 S.C. 23, 29, 667 S.E.2d 728, 731 (2008)). Failure to conduct this Rule 403 balancing is error. *State v. Spears*, 403 S.C. 247, 252, 742 S.E.2d 878, 880 (Ct. App. 2013).

Although the trial court erred by not conducting the required Rule 403 balancing, we hold it did not err by admitting the testimony because no reasonable application of Rule 403 could have resulted in its exclusion. First, the evidence had substantial probative value in explaining the delayed disclosure. Galloway sexually abused the victim from 1988 to 1990, but the victim did not disclose this abuse to the police until 2016. The victim's testimony about Galloway's violence towards Waldrop provides an answer to a key question in this case—"the implied if not express argument" we referred to earlier—of why the victim waited over twenty-five years to disclose the sexual abuse to the police.

Also, the danger of any unfair prejudice was low. In particular, the testimony about Galloway's *physical* violence towards Waldrop is not closely connected to his propensity to commit *sexually* violent acts on minors. In other words, though Galloway's propensity to commit domestic violence against women does show he is a bad person in general, it does not arise from a character trait that directly demonstrates he is likely to commit acts of sexual violence toward children. Because the probative value of the evidence was substantial and the danger of unfair prejudice was low, the evidence could not have been excluded under Rule 403 and there was no reversible error.

## IV. Third Issue

Galloway argues the trial court erred in admitting testimony about the contents of a letter he wrote to Waldrop. Upon further study, we find no reason to disagree with the court of appeals' analysis of this issue, *Galloway*, 436 S.C. at 467-68, 872 S.E.2d at 654, and it was "improvident" for this Court to grant certiorari. Thus, we dismiss the writ of certiorari on this issue.

## V. Conclusion

For the reasons explained above, we affirm the court of appeals.

**AFFIRMED.**

**KITTREDGE, JAMES and HILL, JJ., concur.  BEATTY, C.J., concurring in result only.**